**WALNUT HILLS FARMS, INC.,**
**Appellant,**

v.

**FARMERS COOPERATIVE COMPANY**
**OF CRESTON, Iowa, Appellee.**

No. 2–56236.

Supreme Court of Iowa.

Aug. 30, 1976.

Arnold O. Kenyon, Creston, and L. P. Van Werden of Reynoldson, Brown & Van Werden, Osceola, for appellant.

Mullin, Mullin, McLaughlin & Harvey, Creston, for appellee.

Heard before MOORE, C. J., and Le-GRAND, REES, UHLENHOPP and HARRIS, JJ.

LeGRAND, Justice.

This appeal arises out of dealings among three corporations, one of which is now bankrupt. Trial by jury resulted in verdicts for plaintiff, Walnut Hills Farms, Inc. (Walnut Hills), in the amount of $1,097.07 against defendant, Farmers Cooperative Company of Creston, Iowa (Farmers Cooperative), and for defendant on its counterclaim in the amount of $2,206.81. Plaintiff appeals from the result reached on the counterclaim. We reverse.

The sole question for determination is whether Walnut Hills is liable for the purchase of material and supplies made by Progressive Feeders, Inc. (Progressive Feeders) from Farmers Cooperative. Farmers Cooperative claims Progressive Feeders made the purchases as agent for Walnut Hills. It is conceded there was no express appointment of agent nor does Farmers Cooperative rely on apparent authority. It relies on agency by implication. There is also a claim Walnut Hills ratified the acts of Progressive Feeders.

We recite briefly the facts important to this dispute. Progressive Feeders, now bankrupt, was organized in 1969. Its principal business was the sale of feed and the raising of livestock. Several years later, Walnut Hills was incorporated for the purpose of operating an 80-acre farm which the corporation was buying on contract. Walnut Hills' only income came from several leases on this farm. One of the lessees was Progressive Feeders, whose livestock was kept and raised there.

Progressive Feeders and Walnut Hills had some duplication of stock ownership and officers. At all times material to this litigation, Arnold Betts was president of Walnut Hills. For a short period he had also been president of Progressive Feeders. Even after his resignation as president of this corporation, he remained important in its corporate decisions. Elmer Woodside was vice-president of Walnut Hills and, upon Betts' resignation, became president of Progressive Feeders. Frank Bladon was secretary and treasurer of both corpora-

tions. There was also considerable overlap in stock ownership.

I. This matter had its inception on November 8, 1971, when Walnut Hills delivered 1,261 bushels of corn to Farmers Cooperative. Later Farmers Cooperative refused to pay Walnut Hills, and suit was brought for the value of the corn.

Farmers Cooperative's refusal to pay for the corn was based on its claim Walnut Hills was indebted to it in the sum of $2,206.81. It filed a counterclaim for that amount.

The jury found for Walnut Hills in the amount of $1,097.07 and for Farmers Cooperative on its counterclaim in the amount of $2,206.81. Judgment was accordingly entered on both verdicts. Farmers Cooperative does not appeal from the judgment in favor of Walnut Hills. Walnut Hills appeals from judgment on the counterclaim.

■ At the conclusion of the evidence, Walnut Hills moved for a directed verdict on the ground there was no evidence of either implied agency or ratification. We set out the evidence upon which Farmers Cooperative depends.

The counterclaim was asserted for purchases of material and supplies made over a three-month period—from July 27, 1971, to October 22, 1971—by Progressive Feeders. There were twelve separate transactions during this period, all billed to Progressive Feeders. The purchases totaled $2,206.81. Of this amount, $2,139.80 was for corn. The remaining $67.01 was for lumber and materials. The evidence established the corn was fed to Progressive Feeders' livestock.

All bills for these purchases were made out to Progressive Feeders. No claim was asserted against Walnut Hills until December, 1971, after Progressive Feeders filed a petition in bankruptcy.

Farmers Cooperative argues these purchases were made by Progressive Feeders as agent for Walnut Hills. In support of this theory, it showed that Progressive Feeders made a number of purchases from still another corporation in which the sales slips were signed by employees of Progressive Feeders. The designation "Walnut Hills" appeared either before or after the signatures. Other purchases made by Progressive Feeders from this same corporation contained no such designation.

The record shows no explanation as to the reason for adding "Walnut Hills" to some of these sales slips. Assuming this would permit the conclusion those purchases were made as agent for Walnut Hills, we disagree with the assertion this is evidence of agency in the later purchases from Farmers Cooperative.

The purchases with which we are concerned appear to have been straight transactions between Farmers Cooperative and Progressive Feeders. Not a single circumstance suggests Walnut Hills was a principal. The evidence, in fact, compels a contrary conclusion. It is hard to believe, for instance, that Walnut Hills would authorize purchase of corn valued at $2,139.80 to be fed to livestock it did not own.

Farmers Cooperative also relies on the fact that on two occasions rent checks for a residence on the 80-acre farm owned by Walnut Hills were made payable to Progressive Feeders. They were promptly endorsed by Frank Bladon (the treasurer of both corporations) to Walnut Hills. Mr. Bladon testified the money belonged to Walnut Hills and the checks had erroneously been made payable to Progressive Feeders.

This is the sum total of the evidence which is said to show implied agency. It is significant that none of the employees who made the purchases testified. Only Betts and Woodside were called as witnesses. They unequivocally denied the existence of any agency.

■ II. Agency is a fiduciary relationship in which one person acts for and on behalf of another. *Fowler v. Berry Seed Company*, 248 Iowa 1158, 1166, 84 N.W.2d 412, 416 (1957). A relationship of agency may be created by express contract or by

implication. *Kann v. Fish*, 209 Iowa 184, 191, 224 N.W. 531, 534 (1929). *See also Pay-N-Taket, Inc. v. Crooks*, 259 Iowa 719, 724, 145 N.W.2d 621, 624 (1966). An implied agency is an *actual* agency which may be established by the surrounding circumstances and inferences arising therefrom. *Andrew v. Kolsrud*, 218 Iowa 15, 19, 253 N.W. 913, 915 (1934). The existence of an agency is ordinarily a question of fact, *Reed v. Bunger*, 255 Iowa 322, 329, 122 N.W.2d 290, 295 (1963); but before the matter may be submitted for jury determination, there must be substantial evidence to support it. A mere scintilla is not enough. *Martin v. Jaekel*, 188 N.W.2d 331, 333–334 (Iowa 1971). On this appeal, we consider the evidence in the light most favorable to Farmers Cooperative, the party against whom the motion for directed verdict was made. *See Schiltz v. Cullen-Schiltz & Assoc.*, 228 N.W.2d 10, 17 (Iowa 1975).

This quotation from *Pay-N-Taket, Inc. v. Crooks, supra*, 259 Iowa at 724, 145 N.W.2d at 624 and repeated with approval in *Martin v. Jaekel, supra*, is appropriate here:

"An agency results from the manifestation of consent by one person, the principal, that another, the agent, shall act on the former's behalf and subject to his control, and consent by the other so to act. * * *

"An agency may be proven not only by direct evidence of an agreement between the parties but also by circumstantial evidence, such as their words and conduct, from which an intention to create an agency may be fairly implied. *Brown v. Schmitz, supra*, 237 Iowa 418, 424, 22 N.W.2d 340, 343 and citations. The question of whether there was a principal-agent relationship ordinarily is one of fact. *Reed v. Bunger, supra*, 255 Iowa 322, 329, 122 N.W.2d 290, 295, and citations."

Applying these rules to the present case, we find no substantial evidence to support the claim of implied agency.

Without extended discussion, we conclude, too, there was no evidence upon which the question of ratification could have been submitted to the jury. Farmers Cooperative insists there was ratification because some fence posts purchased by Progressive Feeders and used on the leased premises remained there after the termination of the lease and after Progressive Feeders had filed its petition in bankruptcy. We cannot agree this is evidence of ratification.

The motion for directed verdict should have been sustained.

III. Farmers Cooperative also raises several procedural matters. In one it asserts the fact Walnut Hills asked for an instruction on implied agency is an admission there was sufficient evidence of that relationship to go to the jury. The other claim is that Walnut Hills' failure to object to the introduction of an exhibit offered for the purpose of showing a general agency was a waiver of any right to claim there was insufficient evidence to make a jury case.

Farmers Cooperative offers no authority in support of either. We therefore give them no consideration. *Arthur Elevator Company v. Grove*, 236 N.W.2d 383, 393 (Iowa 1975); *State v. Mattingly*, 220 N.W.2d 865, 871 (Iowa 1974).

IV. For the reasons heretofore stated, the case is reversed as to judgment on the counterclaim, which is hereby dismissed. Walnut Hills' judgment against Farmers Cooperative in the amount of $1,097.07, of course, remains in full force and effect.

REVERSED.