AGRISTOR LEASING, a Wisconsin Partnership consisting of AgriStor Credit Corporation, a Delaware corporation, and Steiner Financial Corporation, a Utah corporation, Appellees,

v.

Leon K. FARROW and Joyce Farrow, Appellants.

No. 86–2006.

United States Court of Appeals, Eighth Circuit.

Submitted March 10, 1987.

Decided Aug. 7, 1987.

Rehearing and Rehearing En Banc Denied Sept. 25, 1987.

---

Robert Malloy, Goldfield, Iowa, for appellants.

Brent B. Green, Des Moines, Iowa, for appellees.

Before HEANEY and FAGG, Circuit Judges, and LARSON,[*] Senior District Judge.

LARSON, Senior District Judge.

Defendants Leon K. and Joyce Farrow appeal from the district court's grant of summary judgment in favor of plaintiff AgriStor Leasing. The Farrows are grain and livestock farmers in Ledyard, Iowa. Following numerous solicitations by Norman Nicol, an employee of a local Harvestore dealer, the Farrows entered into an eight year lease agreement for a Harvestore and related agricultural equipment.[1] Plaintiff AgriStor filed the present action seeking damages and replevin of the leased equipment when the Farrows refused to make further payments under the lease. The Farrows denied liability and counterclaimed based upon alleged misrepresentations by Nicol that if the Farrows decided not to keep the Harvestore equipment after one year, they could return it upon payment of an initial rental fee of approximately $19,500.

Upon completion of discovery, AgriStor moved for summary judgment on the ground that Nicol was not its agent and hence any statements he may have made to the Farrows were no defense to its action on the lease.[2] The district court granted the motion on the ground that the Farrows had failed to raise a genuine issue of fact regarding AgriStor's control of Hawkeye Harvestore, Nicol's employer. The district court concluded that because of this failure, a directed verdict for plaintiff AgriStor would be required on the agency issue

---

[*] The HONORABLE EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation.

1. A Harvestore is a large grain silo designed for preserving and storing food for livestock.

2. AgriStor had made a similar motion prior to any discovery, which was denied by Chief Judge McManus. Judge McManus stated that the Farrows' affidavits contained "facts regarding the statements and conduct of [Nicol] and others which clearly raise an issue of fact regarding [Nicol's] relationship with Agristor." The case was subsequently transferred to Judge David R. Hansen, who granted AgriStor's renewed summary judgment motion.

and hence summary judgment was warranted. The Farrows contend on appeal that there are genuine issues of fact concerning Nicol's implied or apparent authority to act on behalf of AgriStor in connection with the lease agreement. We agree that a reasonable jury could find in favor of the Farrows on the agency issue, and hence we reverse the district court's decision and remand this case for further proceedings.

## I. STANDARD OF REVIEW

We address at the outset the appropriate standard of review. Plaintiff AgriStor contends a clearly erroneous standard of review should be applied "where the evidence is undisputed and where the summary judgment decides issues of ultimate fact rather than pure issues of law." Appellee's Br. at 13. Without specifying the particulars, plaintiff asserts that the district court "carefully assessed the lengthy deposition and documentary record and made a factual determination within the meaning of *Pullman[-Standard v. Swint*, 456 U.S. 273, 293, 102 S.Ct. 1781, 1792, 72 L.Ed.2d 66 (1982)]," which this Court is urged to defer to.

Plaintiff misconstrues the function of the court in deciding a motion for summary judgment. Summary judgment is appropriate only when there is *no* genuine issue of material fact, so that the dispute may be decided on purely legal grounds. *Holloway v. Lockhart*, 813 F.2d 874, 878 (8th Cir.1987). As the Supreme Court has recently stated:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The judge's function is not to weigh the evidence, but rather is to determine as a matter of law whether there are genuine factual conflicts. *Id.; Niagara of Wisconsin Paper Corp. v. Paper Industry Union-Management Pension Fund*, 800 F.2d 742, 746 (8th Cir.1986). In making this determination, the court is required to view the evidence in the light most favorable to the non-moving party and to give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *Economy Housing Co. v. Continental Forest Products, Inc.*, 757 F.2d 200, 203 (8th Cir.1985) (citing *Vette Co. v. Aetna Casualty & Surety Co.*, 612 F.2d 1076, 1077 (8th Cir.1980)). *See Holloway v. Lockhart*, 813 F.2d 874, 876. In this case we, like the district court, must determine whether there is a genuine factual issue on the status of Nicol as AgriStor's agent in connection with the Farrows' execution of the lease agreement. *See Niagara of Wisconsin Paper Corp. v. Paper Industry Union-Management Pension Fund*, 800 F.2d at 746; *Vette Co. v. Aetna Casualty & Surety Co.*, 612 F.2d at 1077; *Butler v. MFA Life Insurance Co.*, 591 F.2d 448, 451 (8th Cir.1979).

## II. THE AGENCY RELATIONSHIP

As the district court properly recognized, this determination must be made in accordance with the agency principles of Iowa law. Under Iowa law, the question of whether an agency relationship exists is ordinarily one of fact, and the burden of establishing the existence of the relationship is upon the party who asserts it, here, the Farrows. *See Gatzemeyer v. Vogel*, 544 F.2d 988, 991–92 (8th Cir.1976); *Chariton Feed & Grain, Inc. v. Harder*, 369 N.W.2d 777, 789 (Iowa 1985); *C.F. Sales, Inc. v. Amfert, Inc.*, 344 N.W.2d 543, 553 (Iowa 1983); *Mayrath Co. v. Helgeson*, 258 Iowa 543, 139 N.W.2d 303, 305–06 (1966); *Grismore v. Consolidated Products Co.*, 232 Iowa 328, 5 N.W.2d 646, 651 (1942). The extent of an agent's authority, that is, whether the act in controversy was within the scope of the agent's authority, is also ordinarily a question of fact. *Mayrath Co. v. Helgeson*, 139 N.W.2d at 305–06; *Hall v. Crow*, 240 Iowa 81, 34 N.W.2d 195, 200–01 (1948); *Wright v. Iowa Power & Light Co.*, 223 Iowa 1192, 274 N.W. 892, 894 (1937).

Defendants seek to establish a very limited agency relationship in this case. They do not suggest, for example, that AgriStor would be liable for representations by Nicol concerning the characteristics, performance or use of the Harvestore. They merely assert that Nicol acted as AgriStor's agent with respect to the presentation and terms of AgriStor's lease agreement.[3] To defeat AgriStor's motion, the Farrows thus have the burden of producing facts from which a reasonable jury could conclude, based on a preponderance of the evidence, that Nicol was acting on AgriStor's behalf in connection with the signing of the lease agreement. The facts related to this claim, viewed in the light most favorable to the Farrows, may be summarized as follows.

### A. The Facts

At the time the lease agreement was signed by the Farrows, Norman Nicol was a salesperson employed by Hawkeye Harvestore, Inc., a farm equipment dealer which sells the Harvestore brand of grain storage silos and related equipment. Harvestores are manufactured by A.O. Smith Harvestore Products, Inc. (AOSHPI), a subsidiary of A.O. Smith. Plaintiff Agri-Stor Leasing is a Wisconsin partnership which leases Harvestore equipment on favorable terms to facilitate its use by farmers such as the Farrows. One of AgriStor Leasing's two general partners is AgriStor Credit Corporation, which is also owned by A.O. Smith.

AgriStor Leasing had done business with Hawkeye for several years prior to the Farrows' lease of the Harvestore. Agri-Stor utilized Hawkeye's sales force to present the option of financing through AgriStor Leasing to prospective customers. Hawkeye employees performed a similar function for other financiers as well. Employees such as Nicol explained the leasing program and performed all of the "leg work" required to obtain signatures on the various documents. If a lease application was approved by AgriStor and a lease agreement signed by the customer, Hawkeye would sell the Harvestore to AgriStor, which would in turn lease the equipment to the farmer-customer. Hawkeye also assisted AgriStor in reselling any structures which AgriStor had ownership of at the end of the lease period.

In connection with these arrangements, AgriStor provided Hawkeye salespeople with lease application forms, a booklet entitled "Leasing" which contained the terms of the leasing program, and training in how to inform the customer of AgriStor's leasing terms and how to answer any questions customers might have. AgriStor also provided Hawkeye with various written forms regarding changes in programs and rates, as well as an AgriStor sticker, which adorned the window at Hawkeye Harvestore.

The leasing agreement in this case was obtained pursuant to the general arrangements described above. In early 1981, Norm Nicol visited the Farrows' farmstead five or six times in an effort to sell them a Harvestore structure. Leon Farrow advised Nicol at the first and at subsequent meetings that he was not interested in purchasing the equipment because it was too expensive.[4] On one of Nicol's subsequent visits, Nicol allegedly told Farrow that he could rent the equipment and could return

---

**3.** On this ground alone many of the cases cited by AgriStor and relied upon by the district court are distinguishable. *See, e.g., Wight v. AgriStor Leasing,* 652 F.Supp. 1000, 1007 (D.Kan.1987) (alleged defects and problems with lease equipment); *AgriStor Leasing v. Meuli,* 634 F.Supp. 1208, 1212–13 (D.Kan.1986) (alleged misrepresentations concerning performance characteristics); *AgriStor Credit Corp. v. Schmidlin,* 601 F.Supp. 1307, 1312 (D.Or.1985) (alleged misrepresentations concerning performance characteristics); *AgriStor Leasing v. Hansen,* No. 4–84–632 (D.Minn. February 13, 1985) [Available on WESTLAW, DCT database] (Harvestore allegedly defective; misrepresentations regarding the

characteristics, qualities and use of the Harvestore); *AgriStor Leasing v. Kjergaard,* 582 F.Supp. 39, 40 (D.Minn.1983) (alleged defects in Harvestore equipment); *Defevers v. AgriStor Leasing,* No. 81–CI–162 (D.Ky. November 22, 1982) ("none of the acts which the Plaintiffs complain of ... relate to any action that [the salesman] would have taken as an agent for AgriStor Leasing in completing the various lease documents").

**4.** AgriStor Leasing purchased the equipment from Hawkeye for $94,374.00.

it at the end of one year for an initial rental fee of $19,500 if the Harvestore did not fit into the Farrows' farming operations. Farrow states in his affidavit that he discussed with Nicol his ability to return the equipment "for a long time on several occasions to make certain that the equipment could be returned."

On June 24, 1981, Nicol again presented his proposal to the Farrows. He gave them a purchase order, as well as a lease application and financial statement, which bore the name of AgriStor Leasing and was provided to Hawkeye by AgriStor. Hawkeye then forwarded the Farrows' application to AgriStor's offices. At some later date,[5] Nicol returned to the Farrows' farmstead with John Kirkpatrick, owner of Hawkeye Harvestore, and Rich Wayne, AgriStor's assistant manager from Milwaukee. The purpose of the visit was to evaluate the Farrows' farming operation to determine whether the lease application would be accepted. Wayne and Leon Farrow discussed the Farrows' farming operation, but did not discuss the lease terms.

■ By letter dated June 29, 1981, AgriStor informed the Farrows that their lease application had been approved. The letter advised that Hawkeye would be contacting them regarding any documentation requirements. Shortly thereafter, Nicol again visited the Farrows' farmstead with a number of documents. The Farrows executed the lease at issue in this case, along with other documents provided by AgriStor. Prior to the Farrows' signing of the lease, Nicol again assured Leon Farrow that he could return the equipment after one year and would be liable only for that year's rental. Relying upon Nicol's statements, neither Leon nor Joyce Farrow read the documents Nicol presented to them.[6]

Approximately one year later, AgriStor billed the Farrows for the first lease payment, due July 1, 1982. The Farrows notified AgriStor that they wished to cancel the agreement and return the equipment, but they were informed by AgriStor representatives that they could not cancel without paying the entire amount due. This was the first time the Farrows became aware that the lease was not cancellable as Nicol had represented.

## B. Iowa Law

■ We believe that reasonable jurors could conclude, based upon the above facts, that Nicol was acting as AgriStor's agent in connection with the lease agreement signed by the Farrows. An agency relationship may be established in three ways under Iowa law: an agent may possess express, implied or apparent authority.

---

5. The parties dispute the timing of this meeting. The Farrows claim the meeting occurred before their lease was approved; AgriStor asserts it was not until after the lease agreement was signed. As we have said, we view the facts in the light most favorable to the Farrows in evaluating AgriStor's summary judgment motion.

6. The lease contains language which states that it may not be modified or cancelled and that the lessee has relied only upon the terms contained in the lease, not on any "statements or promises made by any other person." AgriStor contends that these provisions cannot be challenged by parol evidence and are binding upon the Farrows despite their alleged failure to read the agreement based upon Nicol's representations. AgriStor nowhere refutes the applicability of the Iowa Supreme Court's ruling in *Hall v. Crow*, 240 Iowa 81, 34 N.W.2d 195, 199 (1948), however, in which the court specifically held: "where there is evidence of fraudulent misrepresentations in the inception of a contract, such misrepresentations can be the basis for either an action to rescind or for damages, despite the limiting provisions of a contract." The court stated:

> In obedience to the demands of a larger public policy the law long ago abandoned the position that a contract must be held sacred regardless of the fraud of one of the parties in procuring it.... [To hold otherwise would be] to ignore the frequent instances in everyday experience where parties accept, often without critical examination, and act upon agreements containing somewhere within their four corners exculpatory clauses in one form or another, but where they do so, nevertheless, in reliance upon the honesty of supposed friends, the plausible and disarming statements of salesmen, or the customary course of business. To refuse relief would result in opening the door to a multitude of frauds and in thwarting the general policy of the law.

*Id.* (citing *Bates v. Southgate*, 308 Mass. 170, 31 N.E.2d 551, 558 (1941)). We cannot say, based on the record before us, that the lease language precludes the Farrows' current action.

*See Gatzemeyer v. Vogel,* 544 F.2d 988, 992 (8th Cir.1976); *Mayrath Co. v. Helgeson,* 258 Iowa 543, 139 N.W.2d 303, 306 (1966). An agent whose authority has been granted either expressly or by implication possesses actual authority to act on behalf of the principal. *See generally* 3 Am.Jur.2d Agency § 71 at 575 (1986); *Grismore v. Consolidated Products Co.,* 232 Iowa 328, 5 N.W.2d 646, 651 (1942). Apparent authority, or ostensible authority, is that which, although not actually granted, has been knowingly permitted by the principal or which the principal holds the agent out as possessing. *Id.; Mayrath Co. v. Helgeson,* 139 N.W.2d at 306; *Hall v. Crow,* 240 Iowa 81, 34 N.W.2d 195, 200 (1948).

A determination of an express or implied agency focuses on communications and contacts between the principal and the agent. *See generally* Restatement (Second) of Agency § 26 (1958). In describing an actual agency, the Iowa Supreme Court has stated:

> "An agency results from the manifestation of consent by one person, the principal, that another, the agent, shall act on the former's behalf and subject to his control, and consent by the other so to act. * * *
>
> An agency may be proven not only by direct evidence of an agreement between the parties but also by circumstantial evidence, such as their words and conduct, from which the intention to create an agency may be fairly implied."

*Walnut Hills Farms, Inc. v. Farmers Cooperative Co.,* 244 N.W.2d 778, 781 (Iowa 1976) (citations omitted).

Creation of apparent authority, on the other hand, focuses on the effect the principal's conduct or communications has on a third party. Restatement (Second) of Agency § 27 (1958); 3 Am.Jur.2d Agency 79 (1986); *State v. Sellers,* 258 N.W.2d 292, 297 (Iowa 1977); *Grismore v. Consolidated Products Co.,* 5 N.W.2d at 651.

> "Stated inclusively, then, the rule is that if a principal acts or conducts his business either intentionally, or through negligence, or fails to disapprove of the agent's act or course of action so as to lead the public to believe that his agent possesses authority to act or contract in the name of the principal, such principal is bound by the acts of the agent within the scope of his apparent authority as to any person who, upon the faith of such holding out, believes, and has reasonable ground to believe, that the agent has such authority, and in good faith deals with him."

*State v. Sellers,* 258 N.W.2d at 297 (citation omitted).

Neither party refers in their briefs to a contract or other express manifestation of Nicol's agency.[7] The Farrows contend, however, that Nicol possessed either implied or apparent authority. AgriStor argues that Nicol was not its agent based on its lack of control of Hawkeye's activities.[8] The district court agreed, finding that AgriStor's training sessions, provisions of forms and manuals to Hawkeye, and use of Hawkeye employees to present and oversee

**7.** Other courts have found that the Dealer Agreement between AgriStor and other local dealers contains provisions concerning the dealers' responsibility to obtain and forward to AgriStor the various financial documents involved in this case. *See, e.g., Wight v. AgriStor Leasing,* 652 F.Supp. 1000, 1004 (D.Kan.1987); *AgriStor Leasing v. Hansen,* No. 4–84–632, slip op. at 20 (D.Minn. February 13, 1985) [Available on WESTLAW, DCT database] This Dealer Agreement apparently provides, however, that the dealer will not "make any agreements, warranties or representations on behalf of AgriStor" concerning the terms contained in the lease agreement. *Wight v. AgriStor Leasing,* 652 F.Supp. at 1004; *AgriStor Leasing v. Meuli,* 634 F.Supp. 1208, 1211 (D.Kan.1986). Such an

agreement between AgriStor and Hawkeye would not therefore give Nicol the express authority to make the representations he allegedly made to the Farrows, but it also would not preclude a finding that Nicol possessed implied or apparent authority.

**8.** AgriStor also contends that the issue of implied or apparent authority is not properly before this Court because it was not raised before the district court. We have reviewed the record and find that in fact the Farrows did assert implied and apparent authority claims to the district court, as they have on appeal. We therefore reject AgriStor's argument that these issues are not properly before us.

the execution of its documents did not constitute sufficient control to create an agency relationship. Our review of the evidence suggests that the issue of control is a close one. *See Northern v. McGraw-Edison Co.*, 542 F.2d 1336, 1343 (8th Cir.1976), *cert. denied,* 429 U.S. 1097, 97 S.Ct. 1115, 51 L.Ed.2d 544 (1977). Moreover, we believe that the district court erred in focusing exclusively on the issue of control as between Hawkeye and AgriStor, rather than viewing the evidence of agency from the Farrows' perspective.

A corporation such as AgriStor must and does necessarily act through an agent or representative. *Wright v. Iowa Power & Light Co.*, 223 Iowa 1192, 274 N.W. 892, 894 (1937). In determining whether AgriStor's use of Hawkeye employees to present and explain its leasing program and documents created an agency relationship, we refer first to the words of the Iowa Supreme Court in the *Grismore* case:

> "Every delegation of authority includes by implication ... all such incidental authority as is necessary, usual, and proper as a means of effectuating the main authority conferred. In other words, an agent expressly authorized to do a particular act or acts or conduct a particular transaction has implied authority to do acts which are incidental to, usually accompany, or are reasonably necessary to, the accomplishment or performance of the principal act or transaction delegated."

*Grismore v. Consolidated Products Co.*, 5 N.W.2d at 652–53 (citation omitted). Even in cases of implied, as opposed to apparent, authority, Iowa courts look to the impact a principal's conduct has on a third party in determining the principal's liability for acts of the agent.

> "That an agency may be implied or presumed from the conduct of the parties, no one will deny; and it is a general rule that where a party has so acted as to reasonably warrant the presumption that another is his agent ... 'his authority to act for him in that capacity will be conclusively presumed,' so far as it may be necessary to protect third persons who

have acted in good faith and with reasonable prudence."

*Federal Land Bank v. Union Bank & Trust Co.*, 228 Iowa 205, 290 N.W. 512, 515 (1940) (citation omitted).

> Authority to act for one as his agent may be implied from the conduct of the parties, and any conduct which reasonably interpreted may lead a third person to believe that the person with whom he deals is acting for another with his consent will warrant such an implication.

*Standard Oil Co. v. Lyons*, 130 F.2d 965, 968 (8th Cir.1942) (citing Restatement (Second) of Agency § 27).

Although a principal may by special limitations restrict the authority of an agent, "such limitations are not binding upon third parties, and, in the absence of knowledge of such restrictions by them, the principal will be bound to the same extent as though the restrictions were not made." *Wright v. Iowa Power & Light Co.*, 274 N.W. at 896. *See Jacobson v. Benson Motors, Inc.*, 216 N.W.2d 396, 401 (Iowa 1974).

The Farrows contend that AgriStor's actions reasonably led them to believe that Nicol was authorized to act on its behalf in connection with the lease agreement. AgriStor had given Nicol its forms for the lease application, an AgriStor representative accompanied Nicol and his employer to the Farrows' farmstead prior to the application being approved, AgriStor's letter to the Farrows indicting approval of their application stated that Hawkeye would contact them regarding the necessary documentation, and Nicol in fact appeared shortly thereafter, again with forms provided by AgriStor for the Farrows to sign.

These facts are similar to those presented in other cases in which the Iowa Supreme Court has held that the question of agency was for the jury to decide. In *Wright v. Iowa Power & Light Co.*, 223 Iowa 1192, 274 N.W. 892 (1937), for example, the defendant Iowa Power & Light Co. sold the plaintiffs 26 shares of its stock through one C.E. Bauman. Bauman represented to the plaintiffs that they could get their money back by reselling the stock to the company whenever they wanted.

When plaintiffs were forced to sell their stock at a loss, they sued to recover the difference between what they were promised and what they in fact received. The court found the issue of Bauman's apparent authority was properly submitted to the jury, since the plaintiffs

> may well have been lulled into the belief that Bauman, as the Power & Light Company's agent, was acting within the apparent scope of his authority when he made the repurchase agreement with them. The company, through its agent, sold them 26 shares of its preferred stock; it received and enjoyed the benefits of the sale made by its agent; and should, therefore, not be permitted to repudiate its obligations.

274 N.W. at 897. *See Curran Hydraulic Corp. v. National-Ben Franklin Insurance Co.,* 261 N.W.2d 822, 826–27 (Iowa 1978) (jury question presented on agent's apparent authority to bind insurance company); *Mayrath Co. v. Helgeson,* 258 Iowa 543, 139 N.W.2d 303, 305–08 (1966) (sufficient evidence of both implied and apparent authority of agent to settle disputed claim for company); *Hall v. Crow,* 240 Iowa 81, 34 N.W.2d 195, 200–01 (1948) (authority of agent to hold principal liable for statements concerning corn yield question of fact for the jury); *Grismore v. Consolidated Products Co.,* 232 Iowa 328, 5 N.W.2d 646, 651–53 (1942) (question of whether implied authority extended to salesperson's statements concerning turkey feed was for the jury).

AgriStor relies upon comment b to section 1 of the Restatement (Second) of Agency as well as the case of *Walnut Hills Farms, Inc. v. Farmers Cooperative Co.,* 244 N.W.2d 778 (Iowa 1976), in arguing that the district court's grant of summary judgment on the issue of control was warranted. Only the question of implied authority was considered in the *Walnut Hills* case, however, and we find the facts of that case far less indicative of an agency relationship than those presented here. In *Walnut Hills,* Progressive Feeders had purchased corn for its livestock from the defendant Farmers Cooperative. After Progressive Feeders declared bankruptcy, Farmers Cooperative sought to hold the plaintiff Walnut Hills liable for the amount Progressive Feeders owed for the corn. The only evidence of Progressive Feeders' implied authority to act on Walnut Hills' behalf was that Progressive Feeders had designated Walnut Hills' name on several unrelated transactions and two rent checks had erroneously been made to Progressive Feeders instead of to Walnut Hills, which owned the land rented by Progressive Feeders and others. *Id.* at 780. Under these circumstances, the court properly found that Progressive Feeders' corn purchases from the defendant were made solely on its own behalf and for its own benefit. *Id.*

In this case, the Farrows have alleged particular acts of the principal, AgriStor, which led them to believe that Nicol was acting as its agent. We find nothing in either the *Walnut Hills* case or in the Restatement which suggests that acts such as those alleged by the Farrows here do not raise a genuine issue of fact concerning the existence of an agency relationship. *See* Restatement (Second) of Agency §§ 8, 27 (1958); *Schaefer v. Telex, Inc.,* 132 F.Supp. 140, 144 (D.Minn.1955) (citing Restatement). Indeed, the Farrows have specifically raised a claim of apparent authority, which is based on the appearance created by the principal, not upon the "actual" relation of the principal and the agent. *See, e.g., State v. Sellers,* 258 N.W.2d 292, 297 (Iowa 1977); *Mayrath Co. v. Helgeson,* 258 Iowa 543, 139 N.W.2d 303, 306 (1966); H.G. Reuschlein & W.A. Gregory, *Handbook on the Law of Agency and Partnership,* § 23 at 62 (1979). Under these circumstances, we believe the Farrows are entitled to a jury determination of their agency claims.

## III. CONCLUSION

■ Because we find that the Farrows have submitted sufficient evidence to create a genuine issue of material fact as to Nicol's authority to act on behalf of AgriStor in connection with the execution of the lease at issue in this case, we reverse the decision of the district court granting Agri-

Stor's motion for summary judgment and remand this case to the district court for further proceedings.