**NORTHWEST AIRLINES, INC., Plaintiff,**

v.

**AMERICAN AIRLINES, INC., Defendant.**

**Civ. No. 4–91–539.**

United States District Court, D. Minnesota, Fourth Division.

Nov. 17, 1994.

Thomas W. Tinkham, William R. Stoeri, Stephen Paul Lucke, Craig D. Diviney, Christopher John Riley, Stacey M. Fuller, Edward Brian Magarian, Jeffrey G. McGuire, Dorsey & Whitney, Mpls, MN, for Northwest Airlines, Inc.

Janie S. Mayeron, Richard Alvin Kaplan, Julie Miriam Friedman, Daniel D. Hill, Pop-

ham Haik Schnobrich & Kaufman, Mpls, MN, James W. Quinn, David W. Gartenstein, Stephen D. Kahn, David B. Goldstein, Sabrina Shroff, Robert Stefanski, Weil Gotshal & Manges, New York City, Donald E. Herrmann, Kelly Hart & Hallman, Ft Worth, TX, for American Airlines, Inc.

Douglas A. Kelley, Steven Eugene Wolter, Kelley Law Office, Mpls, MN, for Laura H. Liu.

## MEMORANDUM OPINION AND ORDER

DIANA E. MURPHY, Circuit Judge, Sitting by Designation.

Plaintiff Northwest Airlines, Inc., (Northwest) brought this declaratory judgment action against defendant American Airlines, Inc., (American) seeking a determination of the legal issues surrounding Northwest's hiring of certain American employees. American counterclaimed, alleging Northwest had tortiously interfered with American's employment contracts, misappropriated trade secrets related to finance and yield management information, and infringed certain copyrighted material.[1]

Now before the court are Northwest's motions for partial reconsideration of a previous order denying its motion for summary judgment on American's misappropriation claims; to strike American's reply to the motions for partial summary judgment and reconsideration; for partial summary adjudication that American's alleged trade secrets became public on July 7, 1993, to cut off damages as of that date, to prevent American from referring to, or presenting evidence of, the existence of trade secrets after that date, and to unseal all documents in the court files; and for summary judgment on American's counterclaim for copyright infringement.

## I.

■ Northwest moves to strike American's entire May 17, 1994 Memorandum in Opposition to Northwest Airlines, Inc.'s Motion for Partial Summary Judgment and Partial Reconsideration on the grounds that American's discovery was untimely and that the memorandum relies in part on evidence presented to the court but not to Northwest. In the alternative, Northwest moves to strike only some of the evidence on the above grounds.

Northwest's motion for partial reconsideration relies in part on evidence which emerged in early 1994. In preparation for the January 26, 1994 deposition of Dr. Richard Larson, American produced for the first time a document entitled "Overview of Yield Management at American Airlines" (Overview).[2] Barry Smith of American Airlines Decision Technologies (AADT) prepared the Overview for a presentation he made to Dr. James Tien on December 17, 1990. Dr. Tien visited American as a representative of the Operations Research Society of America (ORSA), which was evaluating nominees for its 1991 practice award. The award was eventually given to American.

Northwest argues that American improperly conducted discovery regarding the Overview after the December 17, 1993 fact discovery deadline. When both sides produced new documents after the deadline, the parties agreed to follow-up fact discovery on those documents. Affidavit of Stacey M. Fuller (May 23, 1994), Ex. C (Fuller Aff.); Affidavit of David B. Goldstein (May 25, 1994), Ex. # 6 (Goldstein Aff.). Northwest argues that only it, and not American, could seek discovery on the Overview because it had been in American's possession since its creation.

On March 28, 1994, Northwest requested that American provide "[a]ll materials regarding American and the ORSA prize competition which ORSA has." Goldstein Aff., Ex. # 1. In response, American served a subpoena duces tecum on ORSA, requesting that it produce all documents related to AADT on April 7, 1994. American informed

---

1. On August 25, 1994, this case was consolidated with an action by American against KLM Royal Dutch Airlines, Inc. (KLM) involving similar issues. KLM later submitted written arguments in support of the motion by Northwest related to the alleged publication of trade secrets on and before July 7, 1993.

2. Northwest's substantive arguments regarding the Overview are discussed in Section III, *infra*.

Northwest of the subpoena. Goldstein Aff., Ex. # 2. Northwest served a second subpoena on ORSA on April 13, 1994. ORSA objected to the subpoenas on the ground that they requested proprietary information concerning ORSA's deliberative process and indicated it would only provide a response if the parties signed a protective order. *See* Goldstein Aff., Exs. # 3, # 9. American and Northwest both attempted to negotiate agreements with ORSA to maintain the alleged confidentiality of the documents, but only ORSA and American reached an agreement.

After being petitioned by ORSA, the United States District Court for the District of Rhode Island entered a protective order on May 13, 1994, requiring counsel for both Northwest and American to sign a secrecy agreement before receiving confidential information from ORSA. American signed the agreement and received copies of the ORSA documents. Northwest and ORSA did not reach an agreement. American offered to provide the documents to Northwest if it would abide by American's agreement with ORSA until the dispute between Northwest and ORSA could be resolved. Under no obligation to accept, Northwest refused. Fuller Aff., Ex. I.

■ American's memorandum in opposition to Northwest's motion for partial reconsideration relies on some evidence obtained from ORSA through this process. Northwest objects to the use of an affidavit from Dr. Tien and a three-page memorandum attached as an exhibit (Tien documents) because they were produced after the fact discovery deadline.[3] Northwest requested that

American obtain the documents from ORSA, however, and it was aware that American had issued the subpoena to ORSA.[4] Under the circumstances the Tien documents should not be excluded as untimely.[5] Northwest's motion to strike all or part of American's response because it references materials produced beyond the deadline should be denied.

■ Northwest also objects to the use of the Tien documents on the ground that they were submitted to this court ex parte. On May 17, 1994, the deadline for filing its reply to Northwest's motion for partial reconsideration, American filed a brief referring in the section on reconsideration to information from ORSA and submitted the Tien documents as supporting exhibits. It served on Northwest a redacted version of the brief and did not include the Tien documents. That same day American submitted a letter to the court detailing the dispute between Northwest and ORSA and explaining why it had not provided Northwest with copies of the documents subject to the Rhode Island protective order. American sent a copy of the letter to Northwest's counsel.

The adversary system relies on the ability of counsel to analyze the evidence and construct the strongest possible argument for each party. It functions best with the benefit of argument from all counsel. Since the Tien documents and references to them were submitted ex parte in American's response to Northwest's motion for partial reconsideration, it would not be appropriate for the court to rely on them at this time. Northwest's motion to strike the Tien documents as ex parte communications should be granted.[6]

---

**3.** Northwest does not argue that the other evidence on which American relies was untimely.

**4.** Northwest and American agreed to other fact discovery after the deadline. *See, e.g.*, Fuller Aff., Ex. C. The parties cannot unilaterally extend a court-set deadline; the better practice is to seek an extension if it is not possible to obtain materials prior to expiration of the period. Here, Magistrate Judge Jonathan G. Lebedoff noted that the parties' agreement to conduct discovery should apply to both sides. Order (August 24, 1994) at 21.

**5.** All references to Dr. Tien's affidavit and memorandum in American's memorandum of May 17,

1994 should therefore be stricken. Within two weeks, American should provide a revised copy of the memorandum exercising all citations to the Tien documents and any text which relied on them for support. Once American has submitted the revised memorandum, the clerk of court shall remove from the court file the unredacted memorandum, docket # 358, and the Tien Affidavit and supporting exhibit, docket # 364.

**6.** The Tien documents appear to have relevance, however, and American might offer them again. It is not clear why Northwest has not reached agreement with ORSA so as to have access to the documents. Its position may well be tactically related to the merits of this case, as so many of

■ Northwest also moves to strike the affidavit of Thomas Cook, president of AADT at the time of the ORSA award. Northwest argues first that the Cook affidavit should be stricken because he "testified at his deposition that he had no personal knowledge regarding whether the ORSA document was disclosed to ORSA or to others outside American." Northwest Memorandum in Support of Motion to Strike at 9. However, Cook's statements in the affidavit regarding disclosure of the documents are each prefaced with "To the best of my knowledge...."[7] Because Cook did not testify beyond his personal knowledge, Northwest's argument is without merit.

■ Northwest argues in addition that Cook's subsequent deposition testimony is inconsistent with his affidavit. In his affidavit, Cook states that conversations with ORSA representatives led him to believe that they were interested in learning about the general nature and impact of operations research on American, not about proprietary information. Cook's deposition testimony is open to several interpretations. Northwest argues that Cook admitted that he had no basis for his understanding that the ORSA process was confidential. American argues that Cook stated that he could infer confidentiality from the nature of the competition process. The court need not decide whether Cook's statements are inconsistent. That question goes to the weight of the evidence and is for the trier of fact. The motion to strike Cook's affidavit should be denied.

Finally, Northwest moves to strike an errata sheet attempting to revise the deposition testimony of Dr. Richard Larson, ORSA's president. Larson's deposition was taken January 26, 1994. The errata sheet was signed by Larson on April 11, 1994 and forwarded to the court reporter by American attorneys on May 9, 1994. Fuller Aff., Ex. A. During his deposition, Larson was shown a list of approximately 200 documents that he had reviewed or skimmed in preparation for the deposition and was asked to place a check mark next to those which he believed were in the public domain. He checked the Overview document. In the errata sheet, Larson removed that check mark.[8]

■ Northwest argues that the errata sheet should be stricken because it was untimely under Fed.Rule Civ.Pro. 30(e), which as amended in 1993 provides:

> If requested by the deponent or a party before completion of the deposition, the deponent shall have 30 days after being notified by the officer that the transcript or recording is available in which to review the transcript or recording and, if there are changes in form or substance, to sign a statement reciting such changes and the reasons given by the deponent for making them. The officer shall indicate in the certificate prescribed by subdivision (f)(1) whether any review was requested and, if so, shall append any changes made by the deponent during the period allowed.

Northwest has shown neither that Larson and American failed to reserve the right to review the deposition nor when the deposition was available for review. The record does not establish that Larson's errata sheet should be stricken as untimely.

---

the parties' positions in discovery and pretrial preparation have been. Northwest should not unreasonably refuse to enter into a confidentiality agreement or seek to suppress them indefinitely unless a good basis can be shown. The record before the court at this time is insufficient to draw any conclusion relevant to reasonableness, but it should be possible to fashion an order to protect the parties' positions as to the merits of this case without preventing access while also assuring confidentiality.

7. For example, Cook testified: "To the best of my knowledge, AADT did not deliver any written materials concerning American's yield management systems to the ORSA Committee. This includes the document dated December 17, 1990 and titled 'Overview of Yield Management at American Airlines.' Had such documents been removed from AADT and turned over the ORSA Committee, I believe the information would have passed through my office, since I was the principal contact with these persons. To the best of my knowledge, the confidentiality of any proprietary information discussed with the ORSA Committee representatives has been maintained." Affidavit of Thomas M. Cook, ¶ 8.

8. Larson also corrected an erroneous statement regarding the location of a conference and several typographical errors.

In summary, Northwest's motion to strike American's response should be granted with respect to the Tien documents and all references to them. Its motion to strike should be denied as to the remainder of the memorandum, the Cook affidavit, and the Larson errata sheet.

## II.

■ Northwest seeks partial reconsideration of the court's previous order denying its motion for summary judgment on American's counterclaim for misappropriation of trade secrets. It argues that additional evidence has come to light which establishes that the five alleged proprietary features of American's system are not entitled to trade secret protection as a matter of law.

Northwest argues that the Overview document describes all five alleged proprietary features of the American system. It further argues that this document was not treated as confidential by American and that it was presented to members of the ORSA award committee. Northwest argues that this shows American did not take reasonable steps to maintain the secrecy of its system and that the five elements were known or readily ascertainable.

Northwest also argues that the motion to reconsider is supported by the deposition testimony of Charles Fiskeaux, a former American Operations Research Analyst who worked on the demand forecasting component of the DINAMO system. Northwest claims that Fiskeaux's testimony indicates the concepts involved in the American system were in the public domain. Fiskeaux Depo. at 52, 59–60, 75 (Affidavit of Stacey M. Fuller (August 18, 1994), Ex. A and Affidavit of Janie Mayeron (August 26, 1994), Ex. # 1). He testified that American approved his request to present a public briefing on his work and did not prevent him from taking various documents with him when he left American's employ. Id. at p. 77. Northwest argues that

this testimony establishes that American did not treat the five elements as confidential.

Northwest also points to the deposition testimony of Richard Larson, president of ORSA, asserting it indicates that the ORSA document placed the five elements in the public domain. Northwest argues that Larson placed a check mark next to the Overview document during his deposition. As discussed in section I, *infra*, the check marks indicated documents Dr. Larson believed to be in the public domain. Deposition of Richard C. Larson (Affidavit of Stacey M. Fuller (April 28, 1994), Ex. A) at 10, 43.

American responds that the Overview document, Fiskeaux's testimony, and Larson's deposition do not resolve the genuine issues of fact discussed in the earlier order and that summary judgment on the misappropriation claim remains inappropriate. It argues that the Overview document and the presentation to the awards committee were confidential, and that American employees consider the information to be confidential. Deposition of John Leimkuhler, (Affidavit of Robert Stefanski (May 25, 1994), Ex. # 2) at 28–29 (Leimkuhler Depo.).[9] It points out that the presentation was brief and took place at American's offices. Deposition of Barry Smith (3/8/94) at 55; Leimkuhler Depo. at 23–24. American also points out that there is no evidence that written materials were permitted to be taken off the premises. Furthermore, Larson, Smith, and Cook testified that they believed the award process was confidential. Deposition of Richard C. Larson (Affidavit of Robert Stefanski (May 25, 1994), Ex. # 4) at 66 (Larson Depo.); Deposition of Barry Smith (3/8/94) (Affidavit of James Quinn (May 16, 1994), Ex. # 29) at 52–57; Affidavit of Thomas Cook at ¶ 7.

American also argues that portions of Fiskeaux's deposition upon which Northwest does not rely indicate that he believed his combination of techniques was unique in the industry and that he had not encountered anything close to it in the public literature.

9. The Stefanski affidavit was submitted in support of American's May 25, 1994 Supplemental Memorandum in Opposition to Northwest Airlines, Inc.'s Motion for Partial Summary Judgment and Partial Reconsideration. American moved for leave to file the memorandum on the same day. Because the memorandum primarily addresses deposition testimony obtained after American had filed its Memorandum in Opposition on May 17, 1994, the motion should be granted.

Fiskeaux Depo. at 65, 77–80, 81. American also claims that it had only approved the idea of Fiskeaux's presentation in principle, and that no documents or any other preparations for such a speech were ever taken. *Id.*

Finally, American argues that other portions of Larson's deposition refute Northwest's claim that Larson believed the Overview document was in the public domain. American contends that Larson assumed the item he checked on the list referred to a paper entitled "Yield Management at American Airlines." Larson Depo. at 58. That document had been submitted in connection with an unrelated ORSA competition and was later published. When shown a copy of the Overview, Dr. Larson stated that he had not reviewed the document and was not familiar with it. Larson Depo. at 68–69. American also points to the errata sheet Dr. Larson correcting his deposition testimony. Dr. Larson indicated he does not believe the Overview is in the public domain by removing the check mark next to it. Fuller Aff., Ex. A.

On a motion for summary judgment the evidence must be viewed in the light most favorable to the non-moving party. *AGRI-STOR Leasing v. Farrow,* 826 F.2d 732, 734 (8th Cir.1987). Several genuine issues of material fact have been noted previously. *See* Memorandum Opinion and Order dated April 12, 1994, 853 F.Supp. 1110. The additional evidence put forward by Northwest does not resolve or eliminate these issues. They remain for the trier of fact. Northwest's motion for reconsideration should be denied.

### III.

■ Northwest's third group of motions relates to the alleged trade secret status of the five elements. Northwest seeks partial summary adjudication that the five elements entered the public domain on July 7, 1993. It bases this motion on American's failure to file under seal eight documents which discuss the elements.[10] Northwest also moves to cut off damages after that date, and to prevent American from referring at trial to the five elements as a trade secret after that date. It further moves to unseal all the affidavits and exhibits American has filed under seal on the ground that the alleged proprietary information in them has been in the public domain since 1993.

Northwest argues that the five elements became public no later than July 7, 1993 because they could then be found in the public file and thus were readily ascertainable within the meaning of *Electro–Craft Corp. v. Controlled Motion, Inc.,* 332 N.W.2d 890, 898–99 (Minn.1983). It further argues that American waived its right to claim the documents contain trade secrets because the parties' protective order required American to designate protected documents as confidential. Northwest also asserts that the public could have gained access to the file. As proof of this it submits the affidavit of a Northwest attorney who states that a reporter from the *Wall Street Journal* told him that he had reviewed the court files and that the elements were ascertainable. Northwest further asserts that American failed to take reasonable steps to preserve the secrecy of the five elements. KLM joins in these arguments, and also asserts that if the five elements lost trade secret status after July 7, 1993, American's claims against KLM, which relate to KLM's alleged use of the five elements beginning in October, 1993, should be dismissed.

American responds that it requested that the eight disputed documents be sealed upon learning that they had inadvertently not been filed as confidential. It claims that throughout this litigation it has taken steps to protect its trade secrets, including obtaining a protective order, moving to close a contempt hearing in the summer of 1993, and moving to seal documents filed by Northwest and orders issued by the court. It emphasizes that the disputed documents were all generated by Northwest in response to this litiga-

---

10. The disputed documents include affidavits from former Northwest expert Peter Belobaba and Northwest employee Marc Diamond, a letter from American counsel Stephen Kahn, Northwest's answers to American interrogatories, and an excerpt from the deposition of Northwest employee Chris van de Velde. After the instant motion was filed by Northwest, American requested that the filings be sealed: the clerk of court did so on June 8, 1994.

tion and asserts that its inadvertent failure to file them under seal should not deprive them of trade secret status.

■ Northwest relies heavily on *Littlejohn v. BIC Corp.*, 851 F.2d 673 (3rd Cir. 1988), a products liability action in which the parties reached a settlement after a jury found defendant liable for plaintiff's injuries. A local newspaper sought to intervene after settlement to gain access to trial documents as part of an investigation into the number of injuries caused by defendant's product. Defendant opposed the motion, arguing that the record had been sealed and was subject to a protective order which required confidentiality. The Third Circuit rejected defendant's argument, stating that the confidential documents became public once they had been admitted into evidence and their contents discussed in open court. The common law right of access to court files is not absolute, but must be balanced against countervailing factors, such as when records contain confidential business information. *Id.* at 678. In *Littlejohn*, this balance favored disclosure because the information had been used at trial and because the documents did not contain trade secrets; rather, defendant's interest in maintaining confidentiality stemmed primarily from a desire to preserve its corporate reputation. *Id.* at 685.

*Littlejohn* differs from this case. There the trial court had determined that the relevant documents did not contain trade secrets; the documents were therefore entitled to less protection. Moreover, other courts have reached different results. The Tenth Circuit held in *Uselton v. Comm'l Lovelace Motor Freight, Inc.*, 9 F.3d 849 (10th Cir.1993), that a party does not waive confidentiality of trade secrets by disclosing them in open court when it takes subsequent steps to protect them.

American has taken steps to maintain the confidentiality of documents in this litigation. It asserts, and Northwest does not dispute, that its failure to have the disputed documents sealed was inadvertent. Like the *Uselton* plaintiff, Northwest has produced no

evidence that competitors have reviewed the public files. In contrast with *Littlejohn*, there has been no determination here whether the disputed documents contain trade secrets.

On balance it does not appear that American waived its right to claim that the elements are trade secrets. Northwest's motion for partial summary adjudication should be denied.[11]

## IV.

■ On August 20, 1993 American amended its counterclaims to add a claim for copyright infringement. The amended counterclaim was filed after Northwest's motion for summary judgment on the original counterclaims had already been taken under advisement, and the court therefore did not address the copyright claim in its earlier order.

Northwest now moves for summary judgment on American's copyright claim. This claim alleges that Northwest infringed American's copyright in a compilation of information related to the spill model ("ASM Compilation" or "spill tables"). American seeks an injunction to restrain Northwest from further infringing the copyright on the ASM Compilation and to require the impoundment or destruction of all copyrighted work of American in the possession of Northwest. American also seeks monetary damages.

Spill analysis is the process through which airlines predict "the number of passengers who cannot be accommodated on a particular flight (i.e. are 'spilled') because of either seat limitations or yield management controls on the availability of particular fare classes." Affidavit of Barry Smith (July 7, 1993) at ¶ 17. The predictions are made by creating a mathematical expression or model of the flights into which various parameters can be entered. The models estimate: 1) the number of passengers who will actually fly on a particular flight given an assumed total demand; and 2) the total demand for a flight (including the number of potential passen-

---

11. Northwest's related motions *in limine* and to unseal should also be denied. Excluding or unsealing evidence and documents which allege the five elements were trade secrets after July 7, 1993 would be inappropriate in light of the discussion in section III, *supra.*

gers who are turned away) given the number who actually fly. Smith Aff. at ¶ 17. Airlines use this information to make decisions about planning routes, seat pricing, and other financial and logistical matters.

The numerical output from the model can be organized into "spill tables" which are "compilations of data generated by the algorithms that show the interrelation between the two sets of numbers reflecting actual passengers and total demand." *Id.* at ¶ 20. The spill model generates the data, and airline analysts use the compilation of that data, the spill table, as a decision-making tool.

Spill tables are common in the airline industry. Some airlines, including American, have developed their own spill models to generate the spill tables they use. Other airlines use spill tables generated by models developed by air frame manufacturers, such as Boeing, which are distributed to the airlines free of charge.

American's copyright claim involves a computer disk containing 37 American spill tables. Deposition testimony alleges that Ben Baldanza, a former American employee who had gone to work for Northwest, contacted his former secretary at American, Lisa O'Connell, and had her mail him the disk containing the tables. Soon after, O'Connell left American and went to work at Northwest. James Barlow, an AADT employee, also testified that he saw a printed American spill table on the desk of a Northwest employee during a job interview. American alleges that this testimony proves that Northwest unlawfully copied and used American's copyrighted spill tables.

On a motion for summary judgment, the moving party must demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). A fact is material if it affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505,

2510, 91 L.Ed.2d 202 (1986). All evidence and inferences must be viewed in the light most favorable to the non-moving party. *AGRISTOR Leasing v. Farrow,* 826 F.2d 732, 734 (8th Cir.1987). The non-moving party, however, must make a sufficient showing on "every essential element of [its] case for which [it has] the burden of proof at trial." *Reich v. ConAgra, Inc.,* 987 F.2d 1357, 1359 (8th Cir.1993).

■ To establish a claim of copyright infringement a plaintiff must prove: 1) ownership of a valid copyright; and 2) copying of constituent elements of the work that are original. *Feist Publications v. Rural Telephone Service Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 1296, 113 L.Ed.2d 358 (1991). Northwest argues that the spill tables do not contain copyrightable material. It also asserts that even if the tables were copyrightable, there is no evidence that Northwest actually used them or will use them or that American suffered damages.

The parties agree that the numerical data which constitute the output from the spill models are not themselves subject to copyright protection. American has instead claimed copyright protection in its selection and arrangement of the data.[12] Northwest argues it should be granted summary judgment because American's selection and arrangement of the numerical data was purely mechanical and dictated by the algorithms which comprise the spill model. The court need not reach this issue, however. Assuming for the moment that the tables are copyrightable and that Northwest infringed that copyright, Northwest is nevertheless entitled to summary judgment because American has not shown that it is entitled to either injunctive or monetary relief.

Actual damages and lost profits under 17 U.S.C. § 504(b) can be demonstrated in several ways, but all require that the copyright owner show either that it suffered a loss or that the infringer gained some benefit. *See, e.g., Eales v. Environmental Lifestyles, Inc.,*

12. On May 18, 1993, American filed for copyright registration of its spill tables as compilations. The Register of Copyrights entered the same date as the effective date of registration.

Affidavit of James Quinn, Exhibit # 35. American then filed its motion to amend its counterclaims on May 21, 1993.

958 F.2d 876 (9th Cir.1992) (lost market value of work); *Deltak, Inc. v. Advanced Systems, Inc.*, 767 F.2d 357 (7th Cir.1985) (value of use to infringer even if no profits resulted); *Taylor v. Meirick*, 712 F.2d 1112 (7th Cir.1983) (value of infringer's profits); *see also Melville B. Nimmer & David Nimmer, Nimmer On Copyright* § 14.02. Although some uncertainty as to the amount of damages does not preclude recovery for infringement, *Universal Pictures Co. v. Harold Lloyd Corp.*, 162 F.2d 354, 368 (9th Cir.1947), uncertainty as to the fact or existence of damages can. *Frank Music Corp. v. Metro–Goldwyn–Mayer, Inc.*, 772 F.2d 505, 513 (9th Cir.1985).

Even when the evidence is viewed in its favor as it must be on this motion, American has not demonstrated any loss on its part nor any gain on the part of Northwest from the alleged infringement. The evidence American cites to show that Northwest used its tables in a manner to produce gain for Northwest is insufficient to create a material issue of fact. Barlow, for example, testified only that he observed what he believes was a printed copy of at least one American spill table on a Northwest employee's desk. Deposition of James Barlow (Robbennolt Affidavit, Ex. # 10) at 79–81. American's own expert testified that there was no indication that Northwest had incorporated any information from the spill tables into its systems or otherwise utilized the tables. Deposition of Barry Smith (Robbennolt Affidavit, Ex. # 31) at 538–542. Smith also testified that the spill tables could not be used to reverse engineer the American model. Deposition of Barry Smith (Robbennolt Affidavit, Ex. # 30) at 224. Despite the evidence that Northwest had access to some American spill tables, there is no evidence that Northwest used or profited from them in a manner that would allow American to recover monetary damages.[13]

Nor has American made a showing that it suffered a loss as a result of the alleged infringement. American argues it incurred $900,000 in damages because it would have charged Northwest that amount for the system if American had decided to sell it. The lost profits test is a means of measuring the extent to which the market value of plaintiff's copyrighted work has diminished. *Frank Music Corp. v. Metro–Goldwyn–Mayer, Inc.* 772 F.2d 505, 513 (9th Cir.1985). In this case, there is no evidence that Northwest used the spill tables in a manner that diminished their market value to American. In addition, American has not shown it lost a sale. In fact, American has stated unequivocally that it had no intention of selling its spill model to Northwest. American's proffered evidence does not support recovery of either actual damages or infringer's profits under 17 U.S.C. § 504(b).

■ American also claims it is entitled to injunctive relief under 17 U.S.C. § 502(a) to prevent future use of its spill tables by Northwest. An injunction is appropriate where there is a threat of continuing infringement. *Olan Mills, Inc. v. Linn Photo Co.*, 23 F.3d 1345, 1349 (8th Cir.1994). Northwest has indicated that all American spill materials have been returned. American does not dispute this, and it has made no showing that Northwest may or even can use the tables in the future.[14] Injunctive relief would be inappropriate without demonstrated future harm.

In light of the lack of evidence showing American suffered any actual damages or that Northwest used the material or may use it in the future, American cannot show it is entitled to either remedy it seeks. Northwest's motion for summary judgment on the copyright counterclaim should be granted.

**13.** Unlike its copyright counterclaim, American's trade secret claim involves not only the spill tables, but also several documents taken from American by Laura Liu containing the five elements of the alleged trade secret. The misappropriation claim included evidence suggesting that Northwest had incorporated information from the Liu documents into its own computer programs. *See* Memorandum Opinion and Order dated April 12, 1994 at 14–15.

**14.** American also seeks impoundment or destruction of all copies of the spill tables in Northwest's possession under 17 U.S.C. § 503. Because it is undisputed that all copies have been returned to American, this issue is moot.

## ORDER

Accordingly, based upon the above, and all the files, records, and proceedings herein, IT IS HEREBY ORDERED that:

1) The motion of Northwest Airlines, Inc. to strike the May 17, 1994 response of American Airlines, Inc., is granted as to the affidavit and supporting exhibit of Dr. Tien and all references thereto, and is denied in all other respects.

   Within two weeks of the date of this order, American Airlines, Inc. shall file with the Clerk of Court a copy of its May 17, 1994 memorandum with all references to the Tien documents and any text relying on them excised. Upon filing of the revised document, the Clerk of Court shall remove from the court file the materials docketed at # 358 and # 364 (the unredacted memorandum and the Tien documents);

2) The motion of American Airlines, Inc. for leave to file its May 25, 1994 supplemental memorandum is granted;

3) The motion of Northwest Airlines, Inc. for partial reconsideration is denied;

4) The motion of Northwest Airlines, Inc. for partial summary adjudication, *in limine,* and to unseal is denied; and

5) The motion of Northwest Airlines, Inc. for summary judgment on the counterclaim for copyright infringement asserted by American Airlines, Inc. is granted, and that count is dismissed with prejudice.