STATE of Iowa, Appellee,

v.

Roger Dale ASHLEY, Appellant.

No. 89–204.

Supreme Court of Iowa.

Oct. 17, 1990.

Stanley E. Munger, Sioux City, for appellant.

Thomas J. Miller, Atty. Gen., Mark Joel Zbieroski, Asst. Atty. Gen., and Mark J. Schouten, Co. Atty., for appellee.

Considered by McGIVERIN, C.J., and LARSON, SCHULTZ, SNELL, and ANDREASEN, JJ.

LARSON, Justice.

Roger Dale Ashley pled guilty to first-degree theft, Iowa Code §§ 714.1(2), (3); 714.-2(1) (1987), and was sentenced to imprisonment for a term not to exceed ten years. He claims that the court erred at sentencing by (1) refusing to allow him to withdraw his guilty plea on the ground that the State had breached an agreement not to prosecute him; and (2) admitting evidence of other, unproven crimes. The appeal was initially referred to the court of appeals, which affirmed Ashley's conviction by an evenly divided vote. *See* Iowa Code § 602.5106(1). On further review of that decision, we vacate the decision of the court of appeals, vacate the sentence, and remand for resentencing.

Ashley, former sales manager for the Sioux Center Farmers Co-op Society, admittedly converted approximately $67,000 of the co-op's assets. Before the co-op filed a complaint, its general manager, Marvin Ritchason, met with the Sioux County Attorney, Mark Schouten, to seek advice as to how the co-op should proceed.

## I. *The "Broken Plea Agreement."*

Ritchason also met with Ashley prior to the time Ashley was charged. Ritchason demanded that Ashley pay the co-op $13,000 or "other options" would be pursued. Ritchason claims the "other options" referred only to the co-op's civil options; however, Ashley has a different view of the discussion. He claims that Ritchason was acting as an agent of the county attorney and that Ritchason's demand for payment amounted to an agreement not to prosecute if the $13,000 was paid. He claims that the State reneged on that agreement and now seeks to withdraw his guilty plea. He did not attempt to withdraw the plea prior to sentencing because, he claims, he was unaware of the meeting between the co-op manager and the county attorney until it was brought out at the sentencing hearing.

Ashley supports his implied agency argument by citing *Popejoy v. Eastburn*, 241 Iowa 747, 41 N.W.2d 764 (1950), in which we stated:

> The relationship of principal and agent is not dependent upon express agreement between the parties—it may be implied from either words or conduct of the parties, depending upon the circumstances of the case.

*Id.* at 754, 41 N.W.2d at 768. *See also Walnut Hills Farms, Inc. v. Farmers Coop. Co.*, 244 N.W.2d 778, 780–81 (Iowa 1976); *Bauman v. Nutter*, 328 N.W.2d 354, 357 (Iowa App. 1982); Restatement (Second) of Agency § 26 (1958).

The only evidence offered by Ashley to support the argument is that Ritchason received advice from the county attorney before making the demand for payment of the $13,000. To create an agency relationship, however, the principal must agree that the agent act on his behalf and the agent must be subject to his control. *See Walnut Hills Farms*, 244 N.W.2d at 781; Restatement (Second) of Agency §§ 14, 15 (1958). There is no evidence that Schouten consented to let Ritchason make any agreements on behalf of the county attorney. In fact, the record shows just the contrary. Schouten specifically advised

Ritchason not "to cut any deals" with Ashley. Ashley also failed to establish that the county attorney had any control over Ritchason. Because we reject Ashley's claim of implied agency, we affirm the district court's denial of his application to withdraw his guilty plea.

## II. *Evidence of Other Acts.*

At sentencing, the court advised Ashley that he could make a statement in mitigation of punishment as provided by Iowa Rule of Criminal Procedure 22(3)(d). Ashley requested that he not be sent to prison, and produced witnesses to support his claim that he was a good candidate for probation. Tunis Vollink was one of those witnesses. On cross-examination of Vollink by the county attorney, this exchange occurred:

> [COUNTY ATTORNEY]: Your opinion, Mr. Vollink, is that he should not go to prison. If you learned that, in fact, Mr. Ashley, since June of 1988, had been misrepresenting the ancestry of colts he was trying to sell to certain people, that is, deliberately lying about who their sires were, would that have any effect on whether or not you think Mr. Ashley should be sent to prison?
>
> MR. MUNGER [DEFENSE COUNSEL]: Your Honor, I object to the question. That question is without any factual support whatsoever in the record. It's beyond the scope of my examination of this witness, and I don't—I think that based on the record so far, it shouldn't be allowed.
>
> [COUNTY ATTORNEY]: Your Honor, if I might, that's not the proper standard, as to whether or not there's a factual basis in the record.
>
> The standard is whether or not I have some factual basis for it, and I feel I have.
>
> THE COURT: Based on counsel's statement, your objection will be overruled.
>
> WITNESS [VOLLINK]: No, I wouldn't change my opinion on him.
>
> [COUNTY ATTORNEY]: It wouldn't have any effect on your opinion?

WITNESS [VOLLINK]: Not really.

[COUNTY ATTORNEY]: Okay. What if you learned that Mr. Ashley had forged signatures on breeder certificates or applications for registrations? Would that have any effect—since June of 1988. Would that have any effect on your opinion as to whether or not he should go to prison in this instance?

[DEFENSE COUNSEL]: Your Honor, I have the same objection as I previously stated. There's no—absolutely no evidence of that in the record. I've never been provided with any evidence of that.

It's—it's a brand new topic, which I've never been confronted with, had no knowledge of, and I don't think it's fair that this information be brought up at this time by the County Attorney.

If he had this information, he should have provided it to the Probation Department and to me, because we were directed by this Court to exchange information prior to this hearing so that we could each fairly prepare for this hearing.

Now, I've never been confronted with this by Mr. Schouten [county attorney]. And I have not been given an adequate opportunity at this hearing to confront that evidence, and I think it's so prejudicial it shouldn't be allowed by the Court.

Lengthy arguments of counsel surrounding the admissibility of this evidence followed. The county attorney explained that it was not his intent to establish the commission of other crimes but to introduce evidence to contradict Ashley's evidence by showing that he "had done things that didn't jibe with the other good things that were being said about the defendant." In the county attorney's argument, he stated to the court that he had received several telephone calls in regard to Ashley's sale of horses. Ashley misrepresented the sires of these horses, he claimed, and forged transfer registrations on two of the colts. Much of the evidence of Ashley's other acts came through hearsay.

Ashley contends that the county attorney's failure to provide him advance notice of these acts, which amounted to crimes, denied him due process. He also argues that the court erred by relying on these unproven crimes in imposing a prison sentence. *See State v. Black,* 324 N.W.2d 313, 315–16 (Iowa 1982); *State v. Thompson,* 275 N.W.2d 370, 372 (Iowa 1979).

The court ruled that the evidence of other acts would not be admitted to show the actual commission of these crimes but would be admitted to show Ashley's "character traits or other pertinent information" and his "general behavior characteristics."

Our court, quoting *Kent v. United States,* 383 U.S. 541, 562, 86 S.Ct. 1045, 1057, 16 L.Ed.2d 84, 98 (1966), has stated that sentencing hearings need not "conform with all of the requirements of a criminal or even of the usual administrative hearing; but ... *the hearing must measure up to the essentials of due process and fair treatment." State v. Delano,* 161 N.W.2d 66, 72 (Iowa 1968) (emphasis added). In *State v. Drake,* 259 N.W.2d 862 (Iowa 1977), we discussed the process to which a defendant is due at sentencing:

> Although not identified by this court as a due process concept, we distilled the essence of required fundamental fairness in these circumstances when we said:
>
> "A judgment in a criminal case will not be disturbed because of sentencing procedures unless there is a showing of abuse of discretion, procedural conduct prejudicial to defendant, circumstances which manifest inherent unfairness and injustice, or conduct which offends the public sense of fair play."

*Id.* at 867 (quoting *Delano,* 161 N.W.2d at 74).

Iowa Code sections 901.2 through 901.4 reflect the legislature's concern for orderly presentation of information to the court for sentencing purposes and the fundamental notion of fairness. Under section 901.2, the State is required to provide the court with "any information which may be offered which is relevant to the question of sentencing." Under section 901.4, the court must in turn make available to defense counsel all of the presentence investigation information at least three days prior to the date set for sentencing.

Here, the record supports Ashley's claim that the State failed to inform him, prior to the hearing, that it intended to introduce evidence of the alleged misrepresentations. We cannot subscribe to the State's argument that its failure to comply with the advance notice requirements of the statutes is justified because it simply responded to Ashley's request for probation. We believe that such information, if available to the State prior to hearing, must be a part of the presentence investigation report. Here, the information was available to the State prior to sentencing. In fact, the State had witnesses present, some from out of state, ready to testify in rebuttal to Ashley's mitigation evidence. If the State could withhold this information and introduce it without notice, as "rebuttal" to a defendant's request for mitigation, the advance notice provisions of sections 901.3 and 901.4 will be largely eviscerated.

In this case, the county attorney candidly admitted that he refused access to one of the key documents regarding the alleged horse fraud, even though the defendant's lawyer requested it well in advance of the sentencing hearing. In addition, the county attorney refused, at the sentencing hearing, to notify Ashley of additional witnesses the State intended to call during the hearing.

Because of the hearing procedures used and, we believe, in part because advance notice was not given, three days were consumed at the sentencing. This time was spent largely on arguments of counsel surrounding the "horse fraud" issue and the State's failure to give advance notice of it. If the fraud matters had been brought to the attention of the presentence investigator and made a part of his report, these problems could have been minimized.

Aside from the fact that Ashley had not been given adequate notice in advance of the State's intention to call witnesses, we believe that the showing of alleged fraud was very doubtful here. The county attorney succeeded in showing that Ashley represented the colts to be a certain lineage, but proof that these representations were false was quite weak. They were based in large part on hearsay. Despite the county attorney's assertion that the rules of evidence do not apply to sentencing hearings, it is also clear that fair treatment is a part of our law as well. *Delano*, 161 N.W.2d at 72.

The basic requirements of due process and fair notice have been codified in Iowa Code sections 901.3 and 901.4, and we believe that failure to provide the statutory notice renders such evidence inadmissible on the issue of sentencing. Nevertheless, this does not necessarily mean that the sentence must be vacated. It is still necessary to show that the judge impermissibly considered the uncharged offenses. *See State v. Messer*, 306 N.W.2d 731, 733 (Iowa 1981); *State v. Hansen*, 344 N.W.2d 725, 730 (Iowa App. 1983).

■ The fact that the sentencing judge was merely aware of the uncharged offense is not sufficient to overcome the presumption that his discretion was properly exercised. *State v. Pappas*, 337 N.W.2d 490, 494 (Iowa 1983). In order to overcome the presumption of the proper exercise of this discretion, there must be an affirmative showing that the trial judge relied on the uncharged offenses. *Hansen*, 344 N.W.2d at 732. In the present case, the court stated its reasons in the following language:

The Court's reasons for this sentence include the following, and the Court's sentence is based on the following: The age of this defendant, the defendant's *prior record*, the defendant's employment circumstances, the defendant's family circumstances, the nature of the offense committed and the resultant harm to any victim of the offense, whether or not force or a weapon was used in the commission of this offense or whether it was a matter purely of deception, the financial circumstances surrounding the matter, the defendant's need for rehabilitation and his potential for rehabilitation, the necessity of protecting this community from further offense by this

defendant or others of the same—offenses of the same nature.

(Emphasis added.)

It cannot be determined from the statement by the court whether it found the other acts to have been proven or whether it relied on any such evidence in imposing the sentence. The "prior record" language in the court's statement of reasons for the sentence suggest that these acts were at least considered.

Because, as we have determined, evidence of the other acts were introduced in violation of Iowa Code section 901.4, they should not be considered. Therefore, the sentence must be vacated and the case remanded for resentencing.

DECISION OF COURT OF APPEALS VACATED; SENTENCE VACATED; REMANDED FOR RESENTENCING.