# IN THE SUPREME COURT OF IOWA

No. 17–0589

Filed December 14, 2018

**STATE OF IOWA,**

　　Appellee,

vs.

**MONTEZ JAVON LAMONT GUISE,**

　　Appellant.

_____

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Cerro Gordo County, Colleen D. Weiland, Judge.

The State seeks further review of a court of appeals decision reversing the sentence of the defendant. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

Mark C. Smith, State Appellate Defender, Melinda J. Nye, Assistant Appellate Defender, and Nicholas Jones, Law Student, for appellant.

Thomas J. Miller, Attorney General, Sharon K. Hall, Assistant Attorney General, Carlyle D. Dalen, County Attorney, and Gina A. Jorgensen, Assistant County Attorney, for appellee.

**WIGGINS, Justice.**

On appeal, for the first time, the defendant raised the issue that the court's use of the Iowa Risk Revised risk assessment tool (IRR) in sentencing the defendant violated his due process rights. The defendant also claimed the court used an unproven or unprosecuted offense when it sentenced him. We transferred the case to the court of appeals. The court of appeals reversed the defendant's sentence finding there is "no legislative authority supporting the use of the IRR at sentencing." The State asked for further review, which we granted. On further review, we find the court of appeals erred in reaching an issue not preserved by the defendant. We further find the defendant failed to preserve error on his due process claim and the record is insufficient to reach the due process claim on direct appeal. We also find the district court did not use an unproven or unprosecuted offense when it sentenced the defendant. Therefore, we vacate the court of appeals decision finding there is "no legislative authority supporting the use of the IRR at sentencing" and affirm the judgment of the district court.

**I. Background Facts and Proceedings.**

On December 31, 2016, Montez Guise went to his ex-girlfriend M.J.'s Mason City apartment and entered the premises. At that time, there was a valid no-contact order between Guise and M.J., with M.J. being the protected party. Guise left the apartment, taking the apartment key and M.J.'s rent money with him. M.J. barricaded the door, fearing Guise would return. Guise returned shortly thereafter, kicked down M.J.'s apartment door, and started breaking items in the home.

The dispatcher sent Mason City police officers to M.J.'s apartment for a welfare check after receiving reports that M.J. and her friend Gloria, who was also inside the apartment, were in danger. When officers arrived,

Guise prevented M.J. and Gloria from answering the door. The officers kicked down the door and arrested Guise as he was trying to escape out of an apartment window.

The State charged Guise with burglary in the second degree, a class "C" felony, in violation of Iowa Code sections 713.1 and 713.5 (2017) and false imprisonment, in violation of Iowa Code section 710.7, a serious misdemeanor. On February 6, 2017, Guise pled guilty to burglary in the second degree as part of a plea agreement. The court released him to the department of correctional services on pretrial release pending sentencing.

Under the plea agreement, for Guise's burglary charge, the State recommended a ten-year prison sentence, suspended; probation; and a one-thousand dollar fine, suspended. In exchange for his plea, the State dismissed the false imprisonment and related simple misdemeanors, and refrained from asserting the habitual offender enhancement.

On February 23, the department of corrections reported Guise had violated his conditions of release. The department of corrections reported Guise failed to show up for a probation appointment, violated his no-contact order, resisted arrest, and was in possession of drug paraphernalia. The State charged him with the additional charge of interference with official acts, a serious misdemeanor, stemming from his arrest on the violation of the no-contact order. Guise pled guilty to this charge prior to sentencing.

On March 14, the Mason City probation/parole office filed Guise's presentence investigation report (PSI), which it had prepared at the direction of the district court. The PSI stated the interviewer completed an IRR. The IRR recommended Guise be supervised at an intensive level. Guise did not object to the district court's use of the PSI at sentencing and

made only one correction after reviewing the PSI—his explosive attitude only refers to him while on methamphetamine.

On March 20, the court sentenced Guise. At the sentencing hearing, the State recommended the sentence in the plea agreement for the burglary charge. For Guise's interference with official acts resulting in the bodily injury charge, the State recommended one year in jail, suspended; probation for two years; and fines. In other words, the State recommended no jail time.

The district court rejected the sentence recommended by the State for the burglary charge and sentenced Guise to prison for an indeterminate term, not to exceed ten years. For the interference with official acts charge, the district court also rejected the sentence recommended by the State and sentenced Guise to ninety days in jail, to be served concurrently with the burglary sentence.

Guise filed a motion of appeal from the final judgment and sentencing. We transferred the case to the court of appeals. The court of appeals vacated the district court's sentence and remanded, holding there is "no legislative authority supporting the use of the IRR at sentencing." The State requested further review, which we granted.

**II. Issues.**

In his brief on appeal, Guise did not raise the issue decided by the court of appeals. Rather, he contends the district court violated his due process rights by using the IRR. In the alternative, he argues the court abused its discretion by considering the IRR without understanding the purpose and limitations of the IRR. The alternative argument is in essence a due process argument. Thus on further review, we will not consider whether there is legislative authority supporting the use of the IRR at sentencing.

We will consider whether the district court violated Guise's due process rights by consideration of and reliance on the IRR in imposing its sentence. Second, if counsel did not preserve error on this issue, whether counsel provided ineffective assistance of counsel by failing to object to the sentencing proceeding because the court's consideration of and reliance on the IRR violated Gordon's due process rights. Third, whether in sentencing Gordon, the district court abused its discretion by relying on an unproven or unprosecuted offense.

**III. Whether on Direct Appeal or Under an Ineffective-Assistance-of-Counsel Claim, the Court Infringed on Guise's Due Process Rights Based on Its Use of the IRR at Sentencing.**

Today, we filed an opinion in *State v. Gordon*, ____ N.W.2d ____ (Iowa 2018). In *Gordon*, we held a defendant could not raise this due process argument for the first time on appeal when the defendant did not bring the issue to the district court at the time of sentencing. *Id.* at ___. Furthermore, we held we could not address this due process issue under the rubric of ineffective assistance of counsel because the record is insufficient to reach this claim. *Id.*

Here, Guise not only failed to raise a due process issue at the time of trial, but as in *Gordon*, he told the court it could rely on the information in the PSI. For this reason, we find Guise failed to preserve his due process claim for direct appeal. Additionally, we cannot reach Guise's due process claim on direct appeal under the rubric of ineffective assistance of counsel. *See id.* Of course, Guise may bring a separate postconviction-relief action claiming ineffective assistance of counsel based on due process, if he so wishes.

**IV. Whether in Sentencing Guise, the District Court Abused Its Discretion by Relying on an Unproven or Unprosecuted Offense.**

As we said in *Gordon,*

> We review sentencing decisions for an abuse of discretion when the sentence is within the statutory limits. We will find an abuse of discretion when "the district court exercises its discretion on grounds or for reasons that were clearly untenable or unreasonable." A ruling is untenable when the court bases it on an erroneous application of law. If the evidence supports the sentence, the district court did not abuse its discretion.

> "A court may not consider an unproven or unprosecuted offense when sentencing a defendant unless (1) the facts before the court show the accused committed the offense, or (2) the defendant admits it." "In determining a defendant's sentence, a district court is free to consider portions of a presentence investigation report that are not challenged by the defendant." Finally, if a defendant challenges a sentence claiming the court used an illegal factor at sentencing, a defendant need not object at sentencing for us to address the issue on appeal if the issue can be decided without further evidence.

*Id.* at ____ (citations omitted) (first quoting *State v. Thompson,* 856 N.W.2d 915, 918 (Iowa 2014); then quoting *State v. Witham,* 583 N.W.2d 677, 678 (Iowa 1998); and then quoting *State v. Grandberry,* 619 N.W.2d 399, 402 (Iowa 2000)).

At the sentencing hearing, after announcing Guise's sentence, the district court judge listed the fees it would impose on Guise. In doing so, the district court mentioned "a $100 domestic abuse surcharge." Defense counsel said, "Excuse me, Your Honor. There would be no domestic abuse surcharge on this." The court then responded, correcting itself, "I'm sorry, I was thinking about the underlying assault. You're right. But it's a burglary so you're right." Guise argues this exchange indicates the district court judge considered the underlying assault when determining Guise's sentence.

"The fact that the sentencing judge was merely aware of the uncharged offense is not sufficient to overcome the presumption that his discretion was properly exercised." *State v. Ashley*, 462 N.W.2d 279, 282 (Iowa 1990). To overcome the presumption "there must be an affirmative showing that the trial judge relied on the uncharged offenses." *Id.*

Guise does not make such a showing. The district court judge did not reference to domestic assault at any time while discussing his reasoning behind the sentence he imposed. Moreover, as the court of appeals pointed out, and as Guise concedes, intent to commit an assault was an element of the offense of second-degree burglary. Iowa Code § 713.1.

Thus, because there is no affirmative showing the district court relied on a domestic assault in determining Guise's sentence, and Guise admitted to assaultive intent, we find the district court did not abuse its discretion by erroneously discussing a domestic abuse surcharge.

## V. Disposition.

We vacate the court of appeals decision finding there is "no legislative authority supporting the use of the IRR at sentencing." We do not reach Guise's due process arguments because Guise failed to raise the issue in the district court and the record is insufficient to reach the issue on direct appeal under the rubric of ineffective assistance of counsel. We also find the district court did not use an unproven or unprosecuted offense when it sentenced Guise. Therefore, we affirm the judgment of the district court. Guise may bring a separate postconviction-relief action claiming ineffective assistance of counsel based on due process, if he so wishes.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

All justices concur except Appel, J., who concurs specially.

**APPEL, Justice (concurring specially).**

I concur in the result in this case as I agree that the burden falls on Guise to object to the risk assessment tool information presented in the presentence investigation report (PSI) prior to sentencing. We have held that "a district court is free to consider portions of a presentence investigation report that are not challenged by the defendant." *State v. Grandberry*, 619 N.W.2d 399, 402 (Iowa 2000).

It might be appropriate to not require a contemporaneous objection to information in a PSI report when a district court's reliance on the information is reasonably unanticipated. Reliance on the statistical assessment in a PSI report, however, is not such an unanticipated development that the generally applicable requirement of contemporaneous objection is inapplicable.

A sentencing hearing "must measure up to the essentials of due process." *State v. Ashley*, 462 N.W.2d 279, 281 (Iowa 1990) (emphasis omitted) (quoting *State v. Delano*, 161 N.W.2d 66, 72 (Iowa 1968)). Due process in the sentencing context includes a right to be sentenced based upon accurate information, *Townsend v. Burke*, 334 U.S. 736, 741, 68 S. Ct. 1252, 1255 (1948), and a fair opportunity to challenge purportedly adverse facts and circumstances that might impact sentencing. By not timely objecting, however, Guise's counsel waived the potential due process challenges.

The failure to make a contemporaneous objection is of course not fatal to an ineffective-assistance-of-counsel attack, but the record is barren of any meaningful information about the statistical information presented in the PSI. The PSI simply states, "As part of the PSI interview process, an Iowa Risk Revised was completed indicating the Defendant

should be supervised at an intensive level." There is literally nothing more in the record. Thus, even in the context of an ineffective-assistance claim, it is hard to know exactly whether or how counsel breached his duty and whether the defendant has been prejudiced.

Guise claims it was ineffective assistance for counsel to fail to provide the court with accurate information about the Iowa Risk Revised (IRR), (which Guise assumes is a risk assessment tool) and to advise the court about limitations on the proper use of the IRR in sentencing. Citing *Malenchik v. State*, 928 N.E.2d 564 (Ind. 2010), and *State v. Loomis*, 881 N.W.2d 749 (Wis. 2016), *cert. denied*, 137 S. Ct. 2290, 2290 (2017), Guise asserts that in order to provide accurate information consistent with due process, the reference to a risk assessment tool in the PSI report should have been accompanied by clear information about its limitations.

Specifically, Guise claims that his counsel should have informed the court that the validity of risk assessment tools such as the IRR depends upon whether the assessments were normed to local populations. In addition, Guise asserts that the district court should have been apprised that studies have raised questions about the disproportional impact of risk assessment tools toward minority offenders.[1] Guise also notes that the district court should have been advised that valid risk assessment tools

---

[1]There is a substantial body of literature exploring whether various risk assessment tools result in disproportionate racial impact. *See, e.g.*, Jessica M. Eaglin, *Against Neorehabilitation*, 66 SMU L. Rev. 189, 215 (2013); Rick Jones, *The Siren Song of Objectivity: Risk Assessment Tools and Racial Disparity*, 42-APR Champion, Apr. 2018, at 5; Andrew D. Selbst, *Disparate Impact in Big Data Policing*, 52 Ga. L. Rev. 109, 109 (2017); Jennifer L. Skeem & Christopher T. Lowenkamp, *Risk, Race, and Recidivism: Predictive Bias and Disparate Impact*, 54 Criminology 680, 680 (2016); Sonja B. Starr, *Evidence-Based Sentencing and the Scientific Rationalization of Discrimination*, 66 Stan. L. Rev. 803, 803 (2014); Tal Z. Zarsky, *An Analytic Challenge: Discrimination Theory in the Age of Predictive Analytics*, 14 I/S: J.L. & Pol'y for Info. Soc'y 11, 12 (2017); *see also* Shaina D. Massie, Note, *Orange Is the New Equal Protection Violation: How Evidence-Based Sentencing Harms Male Offenders*, 24 Wm. & Mary Bill Rts. J. 521, 522 (2015) (discussing disproportionate impact of risk assessment tools based on sex).

must be monitored and periodically renormed. *Loomis*, 881 N.W.2d at 763–64. Further relying on *Loomis*, Guise asserts that his lawyer should have argued to the district court that the use of risk assessment tools should be limited as in *Loomis* to "(1) diverting low-risk prison-bound offenders to a non-prison alternative; (2) assessing whether an offender can be supervised safely and effectively in the community; and (3) imposing terms and conditions of probation, supervision, and responses to violations." *Id.* at 767. Lastly, Guise claims the court should have been informed that the risk assessment tool, in light of its limitations, should not be used to determine the length and severity of a sentence. *Id.* at 769.

Guise's argument that due process requires accurate information about risk assessments beyond a mere conclusion, as demonstrated by *Malenchik* and *Loomis*, is certainly not frivolous. Certainly the shiny legal penny of a new risk assessment tool should be carefully scrutinized by the courts. *See United States v. C.R.*, 792 F. Supp. 2d 343, 462 (E.D.N.Y. 2011) ("Evidence-based sentencing . . . must be handled gingerly."), vacated and remanded, *United States v. Reingold*, 731 F.3d 204, 206 (2d Cir. 2013). We should not forget the recent unattractive history in which the United States Department of Justice and the FBI, for over a decade, developed and advocated the use of "bullet match" analysis that was often presented by expert witnesses without providing the full picture of how statistically insignificant the "match" of the bullets really was. *See More v. State*, 880 N.W.2d 487, 497–98 (Iowa 2016) (citing letter from FBI stating that "[s]cience does not support the statement or inference that bullets, shot pellets, or bullet fragments can be linked to a particular box of bullets" and that "any testimony stating bullets came from the same source of lead is potentially misleading without additional information regarding approximate numbers of other 'analytically indistinguishable'

bullets that also originated from the same source"). The relentless and potentially corrosive drive for efficiency and certainty in a resource-scarce public sector should not drive courts to use risk assessments in an unjustified "off label" manner or in a fashion that otherwise lacks meaningful empirical support to drive sentencing.

Even if the emerging risk assessment tools are found to have a place in sentencing as a "relevant" factor, our law does not allow mere conclusions to be mounted on spikes and paraded around our courtrooms without statistical context. *See, e.g.*, *State v. Williams*, 574 N.W.2d 293, 298 (Iowa 1998) (holding "admission of evidence of a DNA match without accompanying statistical probability of a random match is error"). Indeed, the lack of statistical context is a significant part of the reason for the scandal over bullet-match theory. *See More*, 880 N.W.2d at 497–98.

In connection with the ineffective-assistance-of-counsel claim, I have no doubt that defense counsel has a duty to be aware of current developments in the law. *See State v. Vance*, 790 N.W.2d 775, 789 (Iowa 2010). While we have sometimes employed language stating that defense counsel is not a "crystal gazer," *State v. Westeen*, 591 N.W.2d 203, 210 (Iowa 1999), the colorful language, as clarified by our later caselaw, only refers to developments in the law that a reasonably well-informed lawyer would have no reason to anticipate, *see State v. Graves,* 668 N.W.2d 860, 881–82 (Iowa 2003). It is the obligation of defense attorneys to be aware of developments in the law so that they are in a position to raise claims that are "worth raising" in a dynamic legal system.

In 2017, a reasonably competent attorney should be aware of potential avenues of attack on risk assessment tools that are well established in the legal literature. A quick computer-based search related

to risk assessments would draw an attorney into the vibrant literature and developing caselaw related to use of risk assessment in sentencing.[2]

Why Guise's counsel did not raise these issues in this case, of course, is unclear. It may be that counsel was not aware of the potential inaccuracies and the circumscribed uses of risk assessment. If so, counsel cannot be said to have made a strategic judgment about something that he or she was not aware. *See State v. Clay*, 824 N.W.2d 488, 503 (Iowa 2012) (Appel, J., concurring specially). On the other hand, it may be that in light of the plea agreement with the State and the passing reference in the PSI report to the risk assessment tool results, counsel concluded that the less said the better. If so, that might qualify as a reasonable strategic decision that prevents Guise from raising an ineffective-assistance-of-counsel claim. On the current record, we just cannot answer the question of whether counsel made a reasonable strategic decision or not.

In addition, it is not possible to know the degree of prejudice that may have resulted by not knowing precisely how counsel might have challenged the risk assessment and how the State might have responded

---

[2]*See, e.g.*, Christopher Baird, Nat'l Council on Crime & Delinquency, *A Question of Evidence: A Critique of Risk Assessment Models Used in the Justice System* 5 (2009); Pamela M. Casey et al., Nat'l Ctr. for State Courts, *Using Offender Risk and Needs Assessment Information at Sentencing: Guidance for Courts from a National Working Group* (2011); James Austin, *How Much Risk Can We Take? The Misuse of Risk Assessment in Corrections*, 72 Fed. Probation, Sep. 2006, at 58; Katherine Freeman, *Algorithmic Injustice: How the Wisconsin Supreme Court Failed to Protect Due Process Rights in* State v. Loomis, 18 N.C. J.L. & Tech. Online 75 (2016); Melissa Hamilton, *Risk-Needs Assessment: Constitutional and Ethical Challenges*, 52 Am. Crim. L. Rev. 231 (2015); Cecelia Klingele, *The Promises and Perils of Evidence-Based Corrections*, 91 Notre Dame L. Rev. 537 (2015); Paul H. Robinson, *Punishing Dangerousness: Cloaking Preventive Detention as Criminal Justice*, 114 Harv. L. Rev. 1429 (2001); Dawinder S. Sidhu, *Moneyball Sentencing*, 56 B.C. L. Rev. 671 (2015); Sonja B. Starr, *The New Profiling: Why Punishing Based on Poverty and Identity Is Unconstitutional and Wrong*, 27 Fed. Sent'g Rep. 229 (2015); Jessica Corey, Note, *Risky Business: Critiquing Pennsylvania's Actuarial Risk Assessment in Sentencing*, 7 Colum. J. Race & L. 150 (2016); Steven L. Chanenson & Jordan M. Hyatt, *The Use of Risk Assessment at Sentencing: Implications for Research and Policy* 7 (Vill. U. Charles Widger Sch. L., Working Papers Series, Dec. 2016).

to an effort by Guise to ensure accuracy and limit the purpose of the risk assessment. By way of example only, did the tool use arrests, or charges not resulting in conviction, as a factor in the calculation? If so, there would be a serious problem as there is authority for the proposition that a sentencing court may not consider charges that were dismissed or records of arrests without convictions. *See State v. Black*, 324 N.W.2d 313, 315 (Iowa 1982); *State v. Barker*, 476 N.W.2d 624, 627 (Iowa Ct. App. 1991). If the court cannot use dismissed criminal charges in sentencing, how can consideration of such factors come in the back door by being buried into a risk assessment?

We do not know whether the IRR was normed with an appropriate Iowa population. We do not know whether the tool has been renormed and monitored. We do not know anything, really, about the database, assuming there is a database, behind the IRR.

I am also concerned about process issues lurking behind this case. Ordinarily, the PSI report is made available to the defendant only a few days before sentencing. When the PSI report contains risk assessment data, a defendant may be able to ask the district court prior to sentencing to recognize the limitations on the nature and proper use of the tool as described in *Loomis* and *Malenchik*.

But a few days' notice is not enough time for a defendant to mount a serious challenge to the underlying reliability of the risk assessment evidence as being so unreliable as to be hocus pocus.[3] A full-court press

---

[3]*See* John Monahan, *Violence Risk Assessment: Scientific Validity and Evidentiary Admissibility*, 57 Wash. & Lee L. Rev. 901, 910 (2000) (discussing application of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993), to risk assessments); Charlotte Hopkinson, Note, *Using* Daubert *to Evaluate Evidence-Based Sentencing*, 103 Cornell L. Rev. 723, 733 (2018) (same). I recognize that the rules of evidence may not be fully applicable in a sentencing hearing, but unreliable information may well be excluded as not relevant to the underlying sentencing process.

on the question of reliability of the risk assessment would likely require the hiring of a highly qualified expert. Even if the defendant does not wish to mount a full-blown attack on the statistical model and instead wishes to make a more limited point—say, for instance, the disproportionate impact of use of housing, employment, and level of educational attainment of people of color—the defense will not be able to develop the attack in a few days, particularly when the defendant is indigent and will require court approval prior to the hiring of an expert to challenge the statistical information. And, of course, the state will want its opposing expert. In short, in order to allow the defendant to mount a substantial challenge to the underlying reliability of risk assessment data, and to give the state an appropriate opportunity to respond, the sentencing hearing will likely need to be continued for a period of weeks.

The continuation of a hearing to allow for the development of expert testimony is not unheard of, of course, but in the context of sentencing, the consequence of a continuance to a criminal defendant might be quite troublesome. For example, an incarcerated indigent defendant awaiting sentencing might believe he or she has a reasonable chance at a deferred judgment or probation. But, in order to mount an effective challenge to the use of statistical evidence, the defendant's period of presentence incarceration may be extended for a number of weeks.

But one thing is clear: if the state intends to offer risk assessments for the court to rely upon in sentencing, the defendant has a right to an adequate opportunity to attack it. If the court does not give the defendant an adequate opportunity to attack the statistical evidence, it should not be utilized in sentencing.

In conclusion, I want to make clear that I do not categorically reject any use of risk assessment tools in the sentencing process. I recognize

that the PEW Center on the States, the National Institute of Corrections, the National Center for State Courts, and the American Law Institute have all expressed interest in evidence-based sentencing. *See* J.C. Oleson, *Risk in Sentencing: Constitutionally Suspect Variables and Evidence-Based Sentencing*, 64 SMU L. Rev. 1329, 1343, 1394 (2011). I also recognize that sentencing based solely on "intuition" or "gut" runs the risk of allowing implied bias a free reign and can be lawless in nature.[4] *See* Chris Guthrie et al., *Blinking on the Bench: How Judges Decide Cases*, 93 Cornell L. Rev. 1, 5 (2007) (urging the justice system to take steps to limit the impact of overreliance on intuition). Further, the "intuition" or "gut" of a judge who was a former prosecutor may well differ from the "intuition" or "gut" of a public defender. Undisciplined intuitive sentencing runs the risk of telling us more about the judge than the person being sentenced.

A fully-developed record may well show that risk and needs assessment tools that assemble variables in a statistically valid way may be of some assistance as a check on unregulated sentencing discretion and may promote deeper thinking by discretionary decision-makers into the sentencing process. In short, it is possible that when a full record is developed, properly designed and utilized risk assessment tools may enhance and inform the exercise of judicial discretion. In addition to the binary question of whether a risk assessment may or may not be used in sentencing, however, more nuanced additional questions must be asked regarding how any such tool may be used. In light of the procedural

---

[4]The literature on implicit bias is voluminous and raises a serious challenge to conventional legal doctrines. *See generally* Christine Jolls & Cass R. Sunstein, *The Law of Implicit Bias*, 94 Calif. L. Rev. 969, 969 (2006); Jerry Kang & Kristin Lane, *Seeing Through Colorblindness: Implicit Bias and the Law*, 58 UCLA L. Rev. 465, 465 (2010); Linda Hamilton Krieger, *The Content of Our Categories: A Cognitive Bias Approach to Discrimination and Equal Employment Opportunity*, 47 Stan. L. Rev. 1161, 1164 (1995); Charles R. Lawrence III, *The Id, the Ego, and Equal Protection: Reckoning with Unconscious Racism*, 39 Stan. L. Rev. 317, 321–22 (1987).

posture of this case and the companion cases, these questions must await further legal developments.