# IN THE COURT OF APPEALS OF IOWA

No. 18-1289
Filed October 9, 2019

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**BROOKE LYNN TRIMBLE,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Jeffrey L. Harris,

District Associate Judge.

A defendant appeals her sentence for domestic abuse assault and violation

of a no-contact order. **SENTENCES VACATED AND REMANDED FOR**

**RESENTENCING.**

Jesse M. Marzen and Cynthia Tofflemire of Marzen Law Office, P.L.L.C.,

Waverly, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney

General, for appellee.

Considered by Potterfield, P.J., and Tabor and Bower, JJ.

**TABOR, Judge.**

The sentencing court described Brooke Trimble's serious-misdemeanor assault of her boyfriend as "somewhat of a reverse Me Too situation" before imposing a term of 365 days, all but fifteen days suspended, and one to two years supervised probation. Trimble asks to be resentenced, alleging the court's remarks signaled its consideration of improper factors. She also argues the sentence was grossly disproportionate to the crime.

In our review, we find the court's "reverse Me Too" analogy revealed its reliance on an unprosecuted and unproven charge. Accordingly, we vacate Trimble's sentences for domestic abuse assault and the no-contact order violation and remand for resentencing before a different judge.

## I.    Facts and Prior Proceedings

A neighbor summoned law enforcement to the residence of Brooke Trimble and her boyfriend, B.M., in November 2017 after hearing screaming and banging inside. B.M. told the responding deputy he and Trimble "got into an argument that morning" and Trimble slapped him while he was holding their infant son. He also said Trimble tackled him, held him down on the bed, and tried to remove his clothes. B.M. said he refused Trimble's sexual advances and was relieved when the deputies responded to the neighbor's 911 call. B.M. showed the deputies bruising on both sides of his neck, as well as on his right bicep and chest. The deputy reported Trimble was uncooperative and had to be restrained.

The State charged Trimble with child endangerment; domestic abuse assault causing bodily injury, first offense; and obstruction of emergency

communications.  She agreed to plead guilty to domestic abuse assault.[1]  At the same hearing, Trimble also pleaded guilty to a later-incurred charge for violating the no-contact order imposed following the November 2017 incident.  In exchange, the State agreed to recommend Trimble be sentenced to 365 days confinement with all but six days suspended, one to two years supervised probation, completion of the Iowa Domestic Abuse Program, and a $315 fine with surcharge and court costs.  Along with the sentencing recommendation, the State dismissed the child-endangerment charge, an aggravated misdemeanor, and the obstruction-of-emergency-communications charge, a serious misdemeanor.

At the July 2018 sentencing hearing, the State followed through with its promised recommendation of six days in jail, while Trimble asked for the two-day statutory minimum term.  B.M. gave a victim impact statement, recounting the attack by Trimble after he told her he was going to the bank that November day:

> [S]he fired back, 'Oh, so are you going to sleep with that girl from the bank?'  And she grabbed my shirt and said,. 'We are having sex right now.'  I told her no and she began trying to pull me out of the vehicle . . . .
> Then she began clawing at my face and forcing me to kiss her. . . .
> She screamed at the top of her lungs that we are having sex right now.  And she ripped off all my clothes, or ripped off all her clothes.  And I told her no again.

B.M. also told the court: "Brooke has always made sure she was in control of everything I did.  Always intimidated me to do what she wanted me to do. . . . And if I tried to stand up for myself or leave, she'd become violent."

---

[1] Our supreme court decided recent amendments to Iowa Code section 814.6 (limiting direct appeals from guilty pleas) and 814.7 (prohibiting resolution of ineffective-assistance-of-counsel claims on direct appeal) apply only prospectively and do not apply to cases, like this one, pending on July 1, 2019.  *See State v. Macke*, 2019 WL 4382985, at *7 (Iowa 2019).

Then the district court addressed Trimble:

> In this case the court is going to punish you for the offense that you pled guilty to. The court is going to consider your rehabilitative potential, that the sentence will be designed to deter you and others similarly situated from committing this type of act in the future, and the sentence is designed to protect society.
>
> In listening to the victim impact statement, the first thing that came to the court's mind was that we're in somewhat of a reverse Me Too[2] situation here. It's difficult to—well, it's difficult not to turn on the TV and see some of the allegations made by a number of women across the United States against people who have assaulted them and violated them. The victim in this case has made his statement about how he has been basically violated by you on this particular occasion.

After that foray into current events, the court noted Trimble had "no real criminal record" other than traffic citations. The court then sentenced Trimble to 365 days confinement, all but fifteen days suspended, one to two years supervised probation, a $315 fine with surcharge and court costs, and completion of the Iowa Domestic Abuse Program. Additionally, the court sentenced her to seven days in

---

2 In 2006 Tarana Burke founded the MeToo movement to help survivors of sexual violence, particularly women and girls of color. Abby Ohlheiser, *The Woman Behind 'Me Too' Knew the Power of the Phrase When She Created It—10 Years Ago*, Wash. Post, Oct. 19, 2017, https://www.washingtonpost.com/news/the-intersect/wp/2017/10/19/the-woman-behind-me-too-knew-the-power-of-the-phrase-when-she-created-it-10-years-ago/. In October 2017, "the #MeToo movement exploded onto the popular media stage after actress Alyssa Milano asked Twitter users to 'write "me too" as a reply to [her] tweet' if they had 'been sexually harassed or assaulted.'" Angela Onwuachi-Willig, *What About #UsToo?: The Invisibility of Race in the #MeToo Movement*, 128 Yale L.J. F. 105, 106 (2018) (alteration in original) (footnote omitted).

It is unclear exactly what the sentencing court meant in dubbing Trimble's crime a "*reverse* Me Too" situation. The current #MeToo movement focuses on sexual violence and workplace harassment. While reports from women outnumber those from men, the movement is not a monolith. *See, e.g.*, Anna North, *When the Accused is a Woman: A #MeToo Story's Lessons on Gender and Power*, Vox (Aug. 14, 2018), https://www.vox.com/2018/8/14/17688144/nyu-me-too-movement-sexual-harassment-avital-ronell (describing accusations by men against women).

jail for violating a no-contact order, a simple misdemeanor,[3] to run concurrently with her sentence for the serious-misdemeanor domestic abuse assault.

Trimble appeals, contending the court relied on improper sentencing factors and subjected her to a sentence grossly disproportionate to the crime.

## II.    Scope and Standards of Review

We review sentencing decisions for an abuse of discretion.  *State v. Evans*, 672 N.W.2d 328, 331–32 (Iowa 2003).  Absent a showing of abuse of discretion or a defect in sentencing procedure, including reliance on an impermissible factor, the district court's sentence will survive appeal.[4]  *State v. Witham*, 583 N.W.2d 677, 678 (Iowa 1998).

## III.    Analysis

In determining the appropriate sentence, a court considers the nature of the offense, attending circumstances, the defendant's age, character, and propensities, as well as chances for reform.  *State v. Hildebrand*, 280 N.W.2d 393, 396 (Iowa 1979).  No single factor should determine the sentence, and the court must share its rationale on the record.  *Id.*  And a court "may not rely upon additional, unproven, and unprosecuted charges unless the defendant admits to the charges or there are facts presented to show the defendant committed the

---

[3] The parties do not address the fact no right of direct appeal exists for simple misdemeanors; defendants must seek discretionary review.  *See* Iowa Code § 814.6 (2017); *Tyrrell v. Iowa Dist. Court*, 413 N.W.2d 674, 675 (Iowa 1987).  But when a party seeks an improper form of review, rather than dismissing the case, we may treat the notice of appeal as a request for discretionary review. *See* Iowa R. App. P. 6.108.  We do so here    and consider the sentence for the no-contact order violation together with the assault sentence.

[4] We review constitutional claims de novo.  *State v. Bruegger*, 773 N.W.2d 862, 869 (Iowa 2009).  Because we vacate Trimble's sentence on improper-consideration grounds, we need not address her cruel-and-unusual-punishment argument.

offense." *State v. Formaro*, 638 N.W.2d 720, 725 (Iowa 2002). But we presume it properly exercised its discretion absent an affirmative showing of reliance on those uncharged offenses. *State v. Ashley*, 462 N.W.2d 279, 282 (Iowa 1990). Trimble made that showing here.

Trimble argues the district court's description of her crime as a "reverse Me Too situation" shows the court relied on improper considerations in imposing sentence.[5] In response, the State contends the court's comment was merely "a timely reference to ongoing events." We agree with Trimble—the misplaced reference to the cultural phenomenon reveals an abuse of discretion.

The district court was entitled to consider B.M's victim impact statement when choosing a sentencing option. *See* Iowa Code § 910.5. Additionally, as the State maintains, the fact the victim impact statement brought to the court's mind a phenomenon in the news does not alone show reliance on unproven or unprosecuted offenses. *Cf. State v. Anderson*, No. 15–1180, 2016 WL 5407954, at *14 (Iowa Ct. App. Sept. 28, 2016) (noting reference to "current public debate" on gun control did not suggest court was "relying on it in imposing sentence"). But here, unlike in *Anderson*, the current events were not relevant to the prosecuted offense. *Cf. id.* Because the court relied on the unproven and unprosecuted sexual offenses as described by B.M., we cannot dismiss the sentencing court's remark as simply referencing a recent news story.

---

[5] Because we reverse on this ground, we do not address Trimble's argument the district court's characterization of Trimble's offense as an aggravated misdemeanor when she was being sentenced for a serious misdemeanor constituted reversible error.

The #MeToo movement started as a means to raise awareness and support survivors of sexual assault; and in late 2017 (just before Trimble's sentencing hearing), the movement resurged, focusing on sexual harassment by superiors over workplace subordinates. *See* Nancy Chi Cantalupo, *And Even More of Us Are Brave: Intersectionality & Sexual Harassment of Women Students of Color*, 42 Harv. J.L. & Gender 1, 3–4 (2019).

In the first three pages of B.M.'s four-page victim impact statement, he detailed Trimble's jealousy and unwanted sexual advances. The final two paragraphs addressed how Trimble's crime affected his life. After considering his victim impact statement, the court explained "the first thing that came to the Court's mind" was that B.M. was recounting a "reverse Me Too situation." The court described "how [B.M.] has basically been violated[6] by [Trimble] on this particular occasion." But Trimble was not prosecuted for, nor did she admit to, sexual abuse or assault with intent to commit sexual abuse. So the court's reliance on the alleged sexual nature of the assault is improper when sentencing Trimble for domestic abuse assault. Likening the present situation to the #MeToo movement demonstrates that the court considered the unproven allegations of sexual abuse in sentencing Trimble, constituting reliance on an improper factor. *See State v. Lovell*, 857 N.W.2d 241, 243 (Iowa 2014) (remanding for resentencing in incest case when court referred to unproven allegation that defendant paid victim money in exchange for sex); *see also State v. Glenn*, No. 08-1530, 2010 WL 2598633, at

---

[6] The sentencing court's use of the word "violated" further bolsters the conclusion it considered uncharged allegations of sexual abuse. See *Violate*, *Merriam-Webster's New Collegiate Dictionary* (8th ed. 1973). ("[T]o do harm to the person or especially the chastity of.").

*5 (Iowa Ct. App. June 30, 2010) ("Where a victim impact statement refers to an unprosecuted or unproved crime, there must be affirmative evidence the district court considered that alleged crime in imposing sentence.").

Moreover, even if we discounted the court's remark during the hearing, it doubled down in its written sentencing order. The court wrote: "The victim impact statement, in part, constituted a reverse Me Too [m]ovement concern for the court." True, the court qualified its concern by explaining, "The notoriety and alleged acts of criminal misconduct associated with the alleged offenses and violators in those cases was not imputed to the defendant by the court." But its qualification missed the mark. The domestic-abuse assault did not justify a comparison to the #MeToo movement when the State did not charge, nor did Trimble admit to, B.M.'s allegations of sexual misconduct. Thus, in trying to disclaim reliance on the notoriety of the media cases, the court reaffirmed its consideration of unproven allegations. We cannot speculate about how much weight the sentencing court placed on the unproven sexual aspect of Trimble's actions; and thus, the disclaimer is not sufficient to uphold the original sentence. *See Lovell*, 857 N.W.2d at 243. For these reasons, we vacate Trimble's sentence and remand for resentencing before a different judge.

**SENTENCES VACATED AND REMANDED FOR RESENTENCING.**