# IN THE COURT OF APPEALS OF IOWA

No. 20-0322
Filed March 17, 2021

**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**ABRAHAM RAMIREZ,**
      Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, William P. Kelly (plea and sentencing), Judge, and Cynthia Moisan (revocation) and Becky Goettsch (revocation), District Associate Judges.

Abraham Ramirez appeals the revocation of his deferred judgment and imposition of judgment and sentence for extortion. **SENTENCE VACATED AND REMANDED FOR RESENTENCING.**

Martha J. Lucey, State Appellate Defender, and Stephan J. Japuntich, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Genevieve Reinkoester, Assistant Attorney General, for appellee.

Considered by Vaitheswaran, P.J., and Tabor and Ahlers, JJ.

**TABOR, Judge.**

Abraham Ramirez received a deferred judgment in July 2019 after pleading guilty to extortion, a class "D" felony.  *See* Iowa Code § 711.4(1)(a) (2019).  The district court placed him on two years of probation subject to conditions.  Within six months, Ramirez had repeatedly violated the terms of his probation.  After his second revocation hearing, the court entered judgment on the extortion conviction.  And the court imposed an indeterminate five-year prison sentence.

Ramirez now appeals, claiming five errors in the court's sentencing procedure: (1) failing to consider his mental-health evaluation; (2) assigning undue weight to the Fifth Judicial District, Department of Correctional Services' (DCS) recommendation for incarceration; (3) considering an improper sentencing factor; (4) imposing a prison term without granting defense counsel access to the presentence investigation (PSI) report; and (5) providing inadequate reasons for imposing the sentence.  Because the court erred when it failed to provide counsel access to the PSI before imposing judgment and sentence, we vacate the sentencing decision and remand for resentencing.  Finding this issue dispositive, we need not reach the merits of the other claims.

## I.  Facts and Prior Proceedings

In late January 2019, Ramirez boarded a DART[1] bus and ordered the driver to get out.  When the driver refused, Ramirez threatened to harm him, saying "[s]omeone's after me.  Drive this thing or I'll bust your head wide open."  Ramirez then forced the driver to transport him to the police station.  Refusing to let the

---

[1] The Des Moines Area Regional Transit Authority operated the bus.

driver slow the bus down, Ramirez said, "[D]o what I say or you'll be dead." Police arrested Ramirez outside of the station. Ramirez admitted that he had smoked methamphetamine earlier in the day and that he had threatened the bus driver because he wanted to chat with the police chief about "his life and the USA."

The State charged Ramirez with four counts: kidnapping in the third degree, extortion, harassment in the first degree, and false imprisonment. Ramirez pleaded guilty to extortion in exchange for dismissal of the other counts. The plea agreement also prohibited Ramirez from riding DART buses and required him to pay restitution. The district court ordered the DCS to prepare a PSI.

At the July 2019 sentencing hearing, the court heard arguments from the attorneys, as well as a statement from Ramirez. Both sides confirmed they had reviewed the PSI before the hearing. Neither the State nor Ramirez made any additions, corrections, or deletions to the report or objected to the use of the PSI in sentencing. But during argument, defense attorney Paul Statler contested the report's "characterization" of Ramirez, asserting "there's a lot that's not in there." In defense counsel's view, the root causes of Ramirez's criminal behavior were mental-health and substance-abuse issues. Based on that perspective, counsel informed the court that Ramirez would engage in mental-health services and substance-abuse treatment if the court granted a deferred judgment.

By contrast, the State recommended incarceration based on the severity of the underlying crime. The State also highlighted that Ramirez accumulated fourteen rule violations while in jail, claiming "[t]hat is not a person who is well positioned to succeed on probation." In its view, no evidence supported granting a deferred judgment.

After considering the parties' arguments, the PSI, and a mental-health evaluation prepared by a clinical psychologist,[2] the court granted a deferred judgment and placed Ramirez on probation. The court ordered him to obtain mental-health and substance-abuse evaluations, follow all recommended treatment and aftercare, and seek employment. The court cautioned Ramirez that he would go to prison if he disobeyed probation orders, violated the law, or used illegal substances.

Less than three months later, in October, the DCS filed the first report of violations. It alleged that Ramirez had (1) possessed alcohol during his stay at the Salvation Army's rehabilitation center,[3] (2) failed to maintain contact with his probation officer, (3) missed a scheduled meeting, and (4) failed to pay court fees. Ramirez stipulated to those allegations. The DCS recommended the court revoke his probation and impose the original sentence. But based on Ramirez's ongoing substance-abuse issues, the court continued his probation and placed him at a residential correctional facility.

In late December, the DCS filed a second report of violations. In that report, the probation officer recounted several incidents in which Ramirez disobeyed

---

[2] Clinical psychologist Michael Cooper sent a three-page letter to attorney Statler in June 2019, outlining a "mental status summary" based on four hours of interviewing Ramirez in February 2019. Dr. Cooper reported that Ramirez's recollection of the crime "integrated delusional type beliefs." But the psychologist found it difficult to confirm a principal mental-health diagnosis because of Ramirez's "heavy substance abuse." The letter also noted that Ramirez's performance on a structured-interview test suggested "the possible presence of feigning" psychiatric illness. Yet, Dr. Cooper recommended Ramirez have access to mental-health services. Dr. Cooper's evaluation was filed under seal.
[3] Ramirez was attending the substance-abuse treatment program at the Salvation Army as part of his probation requirements.

facility rules and threatened the staff. Ramirez also tried to ride the DART bus, in violation of the plea agreement and no-contact order. He again stipulated to violating those terms of his probation.

At the January 2020 probation revocation and sentencing hearing, the district court expressed concerns about Ramirez's inability "to abide by basic rules." The court declined to give Ramirez a third chance on probation. In revoking his deferred judgment, the court reasoned: "You may have the best of intentions, but you just don't do it. And you kind of want to do what you want to do, and that concerns me." The court then entered judgment on the extortion offense and imposed an indeterminate five-year prison term. Ramirez appeals.[4]

## II. Scope and Standard of Review

We review the sentence imposed for correction of legal error. *See State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002). "We will not reverse the decision of the district court absent an abuse of discretion or some defect in the sentencing procedure." *Id.*

## III. Access to PSI Report

We begin and end our analysis with Ramirez's argument that the sentencing decision should be reversed because the court imposed a prison sentence without giving his counsel an opportunity to review the PSI. Ramirez asserts, "Had the court provided a copy of the PSI to defense counsel, or continued the hearing, counsel could have addressed the errors and omissions pertaining to the document in advancing [his] case."

---

[4] Despite the bar to appeals from guilty pleas in Iowa Code section 814.6, Ramirez may appeal his sentence. *See State v. Thompson*, 951 N.W.2d 1, 5 (Iowa 2020).

In resistance, the State claims any error concerning the PSI should be lodged as ineffective assistance because counsel never asked to see the report. The State points out that Ramirez had a different attorney at the initial sentencing hearing, who *did* review the PSI but chose not to object to its contents or use. According to the State, "[t]he district court was not required to halt the probation revocation hearing to provide [Ramirez's] second counsel with a PSI that [Ramirez] had already reviewed and approved." We disagree. Even if Ramirez and his former counsel did review the PSI at the initial sentencing hearing, the issue is whether his new attorney had access to the report before the imposition of judgment and sentence at the January 2020 hearing.

Iowa Code section 901.4 affords the defense two rights: (1) access to the PSI at least three days before sentencing; and (2) an opportunity to file "a denial or refutation of the allegations, or both, contained in the report." These requirements serve to satisfy "the basic requirements of due process and fair notice." *State v. Dake*, 545 N.W.2d 895, 897 (Iowa Ct. App. 1996). If defense counsel and his client do not receive the requisite notice, the district court cannot rely on the PSI when sentencing the defendant. *Id.*

The record shows that the defense neither timely received the PSI nor had an opportunity to deny the report's allegations at the second revocation and sentencing hearing. During a discussion of Ramirez's mental-health issues, defense counsel Darren Page informed the court: "I have not read the [PSI] on this case because I don't have access to it." As a result, counsel did not know whether the report discussed Ramirez's mental health or what kind of treatment his client

needed.[5]  Rather than addressing counsel's lack of access to the PSI, the court turned to probation officer Jill Daye's testimony to fill in those gaps.  The court proceeded with this line of questioning:

> THE COURT: As far as you know, there hasn't been a diagnosis of any kind?
> MS. DAYE: Well, as far as the mental health evaluation, he transferred to me from a traditional PO back in November, I want to say, after he was already terminated.  So the—I don't know what his diagnosis is, but he might know some of it.  I just remember it being like the ADHD type of things.  It wasn't—
> THE COURT: I see something about special ed as well?
> MS. DAYE: Yeah, it wasn't schizo-affective, schizophrenia, or anything like that, that I can recall.

The court's reliance on information from the probation officer exacerbated the problem because defense counsel could not object to her assertions without knowing the substance of the PSI.  Because due process and fair notice were not satisfied before sentencing, the PSI was inadmissible during sentencing.

But a violation of section 901.4 does not automatically require reversal of the sentencing decision.  *Id.*  Rather, Ramirez must make "an affirmative showing the court relied on the improper evidence."  *See id.*  Ramirez met that burden.  The court's reasoning shows it did rely on the PSI:

> Okay.  So I have been able to review the file here and the proceedings in this case.  I've considered all of that.  You know it's tough when—I don't doubt that there's probably some special needs here of some kind.  But we have to balance that with the safety of the public and how realistic it is that we're going to be able to address any mental health when there's, obviously, some behavior issues and maybe antisocial personality-type things here that makes it, apparently, impossible for Mr. Ramirez to abide by basic rules.
> I see, you know, there were also problems in the jail.

---

[5] The statements by attorney Page at the January 2020 hearing suggest he had not seen Dr. Cooper's evaluation either.  Defense counsel told the court: "I know that he has mental health issues.  I do not know what they specifically are.  And these are from my observations and from talking directly to my client."

Without access to the PSI, defense counsel could not evaluate or clarify the court's speculation that Ramirez had an antisocial personality disorder. In fact, the PSI did not include any specific diagnosis.[6]

More significantly, the court's reference to Ramirez's problems in jail came straight from the PSI. In recommending incarceration, the report's author included a long list of all the infractions Ramirez logged while in custody. Because those acts were "introduced in violation of Iowa Code section 901.4," the court should not have considered them. *See State v. Ashley*, 462 N.W.2d 279, 283 (Iowa 1990). Based on the court's reliance on impermissible information from the PSI in sentencing Ramirez, we vacate his sentence and remand for resentencing before a different district court judge.

**SENTENCE VACATED AND REMANDED FOR RESENTENCING.**

Vaitheswaran, P.J., concurs; Ahlers, J., dissents.

---

[6] The information on Ramirez's "emotional/personal health" was scant; the PSI said only that he had been previously prescribed Adderall and received therapy as a child. The PSI also explained: "The defendant invalidated the Iowa Mental Health Screen. Therefore, results could not be included in this report."

**AHLERS, Judge** (dissenting).

If anyone erred during this probation-revocation-turned-sentencing hearing—and that's a big "if"—it was not the district court. Therefore, I cannot join in a ruling vacating the judgment and sentence imposed by the court.

Before getting to the details of what transpired at the hearing at issue, a timeline of events leading up to the hearing may be useful. A presentence investigation report (PSI) was filed in Abraham Ramirez's case on July 3, 2019. During his original sentencing hearing held on July 22, both Ramirez and his defense counsel at the time acknowledged having received a copy of the PSI. Other than one minor addition about Ramirez's educational background, the defense had no proposed "additions, corrections, or deletions" to the PSI and did not object to its use. Sentencing was completed, and Ramirez was granted a deferred judgment and placed on probation.

On October 8, probation revocation proceedings were initiated against Ramirez. Ramirez was appointed counsel on October 11. Attorney Darren Page filed an appearance as Ramirez's counsel in the same court file that contained the PSI on October 23. Attorney Page did not represent Ramirez at the original sentencing. On November 4, the district court entered an order finding Ramirez violated terms of probation. In spite of the violations, Ramirez was allowed to keep his deferred judgment and remain on probation, with an added condition that he reside in a residential correctional facility.

On December 30, a second probation revocation proceeding was initiated against Ramirez. Ramirez was appointed counsel on January 3, 2020. Attorney Page again filed an appearance as Ramirez's counsel on January 8. A hearing on

the application to revoke Ramirez's probation was held on January 30. During that

hearing, an exchange took place that forms the basis for the majority's ruling. That

exchange went as follows:

> COURT: So I see that there was a mental health evaluation done before, even, arraignment. I don't see that there was an [Iowa Code chapter] 812 [competency proceeding] of any kind. And then the PSI doesn't really talk about any sort of diagnosis.
> Does he have a diagnosis? Has he been treated in the mental health system before?
> ATTORNEY PAGE: Judge, I have not—I know that he has mental health issues. I do not know what they specifically are. And these are from my observations and from talking directly to my client.
> I have not read the Presentence Investigation Report on this case because I don't have access to it. So I don't know the answer to that question, Judge. I believe—maybe the mental health evaluation was done for the purposes of seeing if there was a legal defense. I'm not sure.

A discussion was then had with Ramirez's probation officer about whether there

was a diagnosis. That discussion concluded with the district court asking if there

was anything else for the record, and defense counsel stated, "I don't have

anything else." The district court went on to consider information presented at the

hearing and contained in the court file, including the PSI and Ramirez's stipulation

that he had violated the terms of probation. The district court revoked Ramirez's

probation, revoked his deferred judgment, adjudicated him guilty of the offense,

and sentenced him to prison.

From the above-referenced exchange, the majority concludes the district

court erred in considering the PSI because doing so violated Iowa Code section

901.4 (2019).[7] I respectfully disagree. If the PSI at issue were a new PSI or

---

[7] In pertinent part, Iowa Code section 901.4 states "[t]he defendant's attorney and the attorney for the state shall have access to the presentence investigation report at least three days prior to the date set for sentencing." Section 901.4 also gives

contained new information, it may be a different story, but it wasn't. Ramirez and his initial defense counsel obtained access to the one and only PSI in this case over six months before the sentencing hearing at issue and were given the option to deny or refute information in the report, which they declined. The fact Ramirez had different counsel did not somehow undo the fact Ramirez and his previous counsel had received the PSI, reviewed it, and approved it six months earlier. Under these circumstances, I cannot conclude there was a violation of section 901.4, and Ramirez cannot claim he was surprised by the use of information he had known about for over six months. To the extent Ramirez's complaint is that attorney Page had not accessed the PSI and was thus unprepared to address the information in it, that is not an error on the part of the district court, it is a claimed error by current defense counsel that should be addressed through a postconviction-relief (PCR) proceeding.

I would further point out that attorney Page's statement that he "didn't have access" to the PSI is ambiguous. I don't know what that statement means, because the record doesn't tell us. It could mean any number of things, possibly as benign as counsel simply did not have the PSI in front of him at the time and had not taken the opportunity to read the PSI earlier when it was in front of him. But even the interpretation of that comment that is most favorable to Ramirez would be that it meant the court file was set up in such a way that attorney Page

---

a defendant or the defendant's attorney the option of filing a "denial or refutation of the allegations" contained in the PSI. These provisions "reflect the legislature's concern for orderly presentation of information to the court for sentencing purposes and the fundamental notion of fairness." *State v. Ashley*, 462 N.W.2d 279, 281 (Iowa 1990).

could not access the PSI that had been in the file since July 2019. However, attorney Page gave no explanation as to what he had done to try to access it and made no request for it. Keep in mind, attorney Page had been counsel of record with access to the court file both from October 11 to November 4 and again from January 3 to the probation-revocation-turned-sentencing hearing on January 30. This seems to be plenty of time for counsel to access the PSI or request a change in the electronic filing system to grant him access if it was not already available. There is nothing in the record suggesting he even tried. Furthermore, when asked during the hearing if there was anything more defense counsel wanted to add to the record, counsel declined. No request for access to the PSI. No request to have a copy printed for counsel's review. No request for a continuance to provide additional time to access it. While a lack of effort to look at the PSI which had been in the court file for over six months may constitute ineffective assistance of counsel—an issue that can be sorted out in a PCR proceeding—I am hard-pressed to conclude it constitutes lack of access to the PSI in a timely manner in violation of section 901.4 after Ramirez and his initial counsel had access to the same PSI for sentencing months earlier. I discern no error committed by the district court under these circumstances.

Understandably and appropriately, having decided the case on the PSI issue, the majority did not address the other issues raised by Ramirez. Since I would not vacate the adjudication of guilt and sentence based on the PSI issue for the reasons stated, it would be necessary to address the other issues raised. Full discussion of the issues is unnecessary in light of the majority's ruling, so I will simply say I find Ramirez's other challenges to be without merit. The record shows

the district court considered proper factors, including Ramirez's mental-health evaluation, did not give undue weight to the recommendation for incarceration contained in the PSI, gave adequate reasons for the sentence imposed, and did not consider any improper factors.

For the foregoing reasons, I would affirm the district court, and I respectfully dissent from the decision to vacate Ramirez's judgment of guilt and the sentence imposed.